IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Alabama Gas Corporation,  ) | |
| Plaintiff,  ) | |
| v.  ) | CIVIL ACTION NO.: |
|  ) | 2:10-cv-1840-IPJ |
| Travelers Casualty and Surety  ) | |
| Company, *et al.*,  ) | |
| Defendants.  ) | |
|  ) | |

## ALAGASCO'S RESPONSE
## TO TRAVELERS' MOTION TO STRIKE

Travelers' Motion to Strike Plaintiff's Late Expert Disclosure and Reports ("Motion to Strike", Doc. 112) should be denied for at least three reasons. First, Travelers has suffered no cognizable harm as a result of Alagasco's limited Supplement to Expert Report of Dennis Unites (the "Unites Supplement," Doc. 113-4), which Alagasco served on September 20, 2011, just seven days after timely disclosing the original Expert Report of Dennis Unites (the "Unites Report", Doc. 113-2) and a full two weeks ***before*** the agreed upon date of October 4, 2011, for Mr. Unites' deposition (and when more than a month still remained in the discovery period[1]). Second, in addition to the fact that the delay was only slight, the Unites Supplement is narrow in scope and responds to information learned after the initial disclosure, thereby standing in stark contrast to the cases cited by

---

[1] *See* Scheduling Order, February 28, 2011 (Doc. 69).

Travelers in its Brief in Support of Motion to Strike (Doc. 113). Third, much of Travelers' effort actually appears aimed at making an anticipatory attack on a possible rebuttal expert (Dr. Glen Gustafson), whom Alagasco has not yet sought to designate, or at making a challenge to the admissibility of a portion of Mr. Unites' expert testimony under either Rule 702 or Rule 703 of the Federal Rules of Evidence. Alagasco respectfully suggests Travelers' efforts with regard to excluding witnesses or areas of testimony are premature, not properly raised, and, in any event, unsustainable.

## ARGUMENT AND CITATION OF LAW

**A.   The Seven Days Elapsed between Alagasco's Timely Disclosure of the Unites Report and the Unites Supplement Caused No Harm within the Meaning of Fed. R. Civ. P. 37(c)(1).**

The threshold and dispositive question posed by Travelers' Motion to Strike (Doc. 112) is whether the addition of one paragraph to Mr. Unites' stated opinions, which was accomplished just seven days beyond the agreed date for disclosure, fourteen days ***before*** the agreed date for his deposition[2] and 41 days ***before*** the end of discovery,[3] caused Travelers any cognizable harm. Rule 37(c)(1) of the Federal Rules of Civil Procedure explains:

---

[2]   *See* **Exhibit A**, p. 1.

[3]   *See* Scheduling Order, p. 3 (Doc. 69).

> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, ***unless the failure was substantially justified or is harmless***.

Fed. R. Civ. P. 37(c)(1) (emphasis added). Many courts have held that a party suffers no harm if the disclosure is provided in advance of the expert's deposition. *See, e.g., In re Complaint of Atl. Marine Prop. Holding Co.,* 2009 U.S. Dist. LEXIS 84309, at *9-10 (S.D. Ala. March 20, 2009) (failure to disclose supplemental report of expert by deadline set in scheduling order was harmless where opposing party was free to depose expert on the issues in the supplemental report); *Competitor Liaison Bureau, Inc. v. CESS-NA Aircraft Co.,* 2011 U.S. Dist. LEXIS 33121, at *22 (M.D. Fla. March 4, 2011) (no harm in allowing expert's supplemental report where opposing party deposed the expert on the supplemental report); *Cowley v. Sunset Yacht Charters, Inc.,* 2011 U.S. Dist. LEXIS 78380, at *6 (S.D. Fla. July 19, 2011) (same); and *Trinity Homes, LLC v. Ohio Cas. Ins. Co. Group,* 2011 U.S. Dist. LEXIS 61701, at *14 (S.D. Ind. June 8, 2011) (same).

Indeed, Alagasco respectfully submits that Travelers' own attempts to describe the harm it has suffered show that none has accrued. Travelers' explanation of the harm flowing from the seven-day delay is that:

> Alagasco's late expert disclosure and untimely reports subject Travelers to undue prejudice. Travelers has lost valuable research and investigation time, as it did not have the entire basis for Mr. Unites' opinion until September 20. Travelers also has less time to

>locate a rebuttal aerial photograph expert and, more importantly, Travelers' expert now has less time to respond to the reports and Alagasco's aerial photograph expert.

*Travelers' Br. in Supp. of Mot. to Strike* 6-7 (Doc. 113).

A parsing of Travelers' recitation of harm shows that the insurer points to just two perceived injuries. First, Travelers complains of "losing valuable research and investigation time." Alagasco suggests that, in light of the strength and depth of Travelers' counsel team, losing seven days to research and investigate a fractional element of an expert's disclosure is truly a trifling matter. In any event, since Alagasco provided the Unites Supplement a full two weeks before the agreed upon date for Mr. Unites' deposition (which proceeded as scheduled on October 4th), Travelers suffered no harm under Rule 37(c)(1).

The second type of harm Travelers claims is that it had "less time to locate a rebuttal aerial photograph expert." As somewhat of an aside, it seems more than a little surprising that Travelers failed to acknowledge to the Court that it already had that expert in hand before filing its Motion to Strike averring difficulty in locating an expert as a suffered harm. (Doc. 113 at 6-7.) On September 30th, the same day Travelers filed the Motion to Strike, its counsel explained to Alagasco that it was still checking with its aerial photo expert for possible deposition dates. *See* **Exhibit B**. Further, on September 26, 2011, just six days after receiving the Unites

Supplement, Travelers' counsel asked Alagasco's counsel to make the films available for copying for their expert:

> We have reviewed the Aerial Image Analysis Report by Glen Gustafson, which we received on September 20. Please provide to us the film positives (the stereo pairs) for the images that were analyzed or referred to by Dr. Gustafson in his report, including the 1937 aerial photography referred to by Dr. Gustafson. Please send the film positives, via FedEx overnight delivery, to HAS Images, Inc. . . .

*See* **Exhibit C** at 3.

As also shown in **Exhibit C**, Alagasco promptly complied with the request, such that the expert Travelers had already retained had the films in question before Travelers filed its Motion to Strike (Doc. 112 at 1-2). Accordingly, even if the Unites Supplement somehow made it more difficult for Travelers to locate its experts, any such difficulties have caused no harm within the meaning of Rule 37(c)(1). Therefore, because Travelers has not suffered any harm as a result of the seven days that elapsed between the timely disclosure of the Unites Report and the date Alagasco provided the Unites Supplement, the Motion to Strike should be denied.

**B.   The Unites Supplement Contemplates Only a Narrow Modification of the Expert Opinion Originally Disclosed**

In addition to the fact that the Unites Supplement was provided only seven days after the agreed upon date (and two weeks ***before*** Mr. Unites' deposition and

5

more than a month ***before*** the end of discovery), the Unites Supplement adds less than a page of text to the original Unites Report.  More particularly, the Unites Supplement states in its entirety:

> I hereby supplement my Expert Report in the above-styled matter to clarify that we accessed aerial photographs for years 1942 and 1978 from the on-line University of Alabama library.  Those photographs may be viewed at http://alabamamaps.ua.edu/aerials/Counties/Madison/index.html.  In addition, I relied upon analysis provided to me by Dr. Glen C. Gustafson of Environmental Image Group, who analyzed photographs for 1942, 1950, 1954, 1958, 1962, 1968 and 1971 using a zoom stereoscope.  In general, stereoscopic examination of photographs provides much greater detail than can be seen with a single photograph, especially with the naked eye.  Dr. Gustafson's September 11, 2011, report analyzing the photos for 1958, 1962, 1968 and 1971 is attached.  Further, two days after the September 13, 2011 publication of my expert report, Dr. Gustafson has provided me with written analysis of photos he examined for 1942, 1950 and 1954, which is also attached.  Dr. Gustafson's analysis of the photographs from 1950 and 1954 indicates that the dismantling or demolition of the holders and their associated below-grade structures appears to have been started prior to February 1950 but was not completed until sometime after February 1954.  The 1950 photo showed shadows of the distribution holder superstructure.  Further, Dr. Gustafson's examination shows that liquid contents from one of the holder bottoms was being drained or otherwise diverted to the nearby creek in early 1954.  Along with review of Dr. Gustafson's reports, I also had several conversations with him regarding his observations of the various photographs listed above.

*Unites Supplement* 1-2 (Doc. 133-4).

The first five sentences do not actually modify any opinion but, rather, merely clarify where Travelers could find some of the aerial photographs Mr. Unites reviewed and provide the source of information regarding other aerial

photographs Unites accessed through Dr. Glen Gustafson of Environmental Images Group.  The last five sentences do modify the Unites Report to disclose additional information he received two days after the original publication date.  More particularly, those sentences serve to modify the sentence appearing on page 5 of the Unites Report that reads, "[t]he gas holders were taken down and the holder pits filled sometime between January 1, 1946 and February 26, 1950."  (Doc. 113-2 at 6.)  According to the Unites Supplement (which is based upon the additional information regarding aerial photographs Mr. Unites received two days after his initial publication date), his opinion is now that "the dismantling or demolition of the holders and their associated below-grade structures appears to have been started prior to February 1950 but was not completed until sometime after February 1954." *Unites Supplement* at 1 (Doc. 113-4).

Of the five cases Travelers cites in its Brief in Support of Motion to Strike (Doc 113), only four actually deal with the timeliness of expert reports or supplements thereto.  A comparison of the modest (and prompt) amendments reflected in the Unites Supplement to the facts at issue in those cases makes it readily apparent that Travelers' Motion to Strike (Doc. 112) should be denied.

To fully understand how little resemblance the facts in *La Gorce Palace Condo Ass'n, Inc. v. QBE Insurance Corp.*, 2011 WL 1522564 (S.D. Fla. 2011) (Doc. 114-2 at 10), bear to the present situation, it is helpful to delve for a moment

into that case's procedural background. Although the court in *La Gorce* had initially warned that discovery deadlines were "cast in stone," it nonetheless granted the plaintiff a two-week extension for making its expert disclosures. 2011 WL 1522564, at *1 (Doc. 114-2 at 10). The plaintiff disclosed six experts on the day of the extended deadline, but apparently provided Rule 26 reports for only two of those experts. *Id.* at *1 and n. 1. In an order issued prior to the opinion cited by Travelers, the judge in *La Gorce* granted a motion to exclude three of the experts for failure to provide a timely expert report. *Id*. at *1.

The plaintiff then sought to supplement the expert reports for two of the non-excluded witnesses. *Id*. One of the "supplements" was 25 pages long and included 16 exhibits, two of which were the reports of the experts previously excluded by the court (which reports were thousands of pages in length). *Id*. The other "supplement" was served at 8:12 p.m. on the night before that expert's deposition. *Id*. Striking the additional materials, the judge explained, "Plaintiff's 'supplemental' reports are not supplements, but rather, are untimely expert disclosures based upon belated investigations and an attempt to boot-strap the stricken opinions into the supplemental reports." *Id*. at *2 (Doc. 114-2 at 11).

In another case cited by Travelers, *Young v. Lexington Ins. Co.*, 2010 WL 55886959 (S.D. Fla. 2010) (Doc. 114-2 at 23), the court had before it a motion for reconsideration of its earlier decision to exclude the plaintiff's experts entirely.

8

The court had previously excluded the experts because the plaintiff had served its Rule 26(a)(2) disclosures **_three months after_** the deadline.  2010 WL 55886959, at *1 (Doc. 114-2 at 23).  The court noted that, on a motion for reconsideration, it would only overturn its earlier decision "to correct clear error or prevent manifest injustice."  *Id*.  Based on the plaintiff's failure to provide any reasonable excuse for its three-month delay in making any disclosures at all, it is easy to understand why the court would find no clear error or manifest injustice.

Travelers also cites *Howard v. New Palace Casino, LLC*, 2008 WL 360622 (S.D. Ala 2008), in which the plaintiff provided the identity of the proposed expert on the agreed deadline for Rule 26(a)(2) disclosures but waited another month and a half before providing the expert report required by the rule.  *See Howard*, 2008 WL 360622, at *6-7 (Doc. 114-2 at 7).  Further, as the court underscored, the expert report was not disclosed until over a month **_after_** the deadline for completing all discovery.  *Id*. at *8 (Doc. 114-2 at 8).  Thus, in *Howard*, the plaintiff was not so much supplementing as it was simply a month-and-a-half tardy with its expert report.

**C.     Travelers' Efforts to Exclude Dr. Gustafson as an Expert or to Limit Mr. Unites' Testimony Are, at Best, Premature**

In addition to attempting to exclude the Unites Supplement, Travelers' Motion to Strike also makes an anticipatory attack on Alagasco's ability to offer

Dr. Gustafson as a rebuttal witness, citing *Lavender v. Florida Gas Transmission Company*, 2003 WL 25682205 (S.D. Ala. 2003).  In *Lavender*, the plaintiff's first disclosure of the expert in question came in the form of an affidavit submitted along with its brief in opposition to the defendant's summary judgment motion. 2003 WL 25682205, at *1 (Doc. 114-2 at 14).  In other words, the plaintiff failed to make any disclosure at all regarding this particular expert until after the discovery period had ended and the opposing party had filed for summary judgment.  The plaintiff sought to sidestep its failure to make the disclosure by claiming the expert was in rebuttal to an expert offered by the defendant.  In rejecting this argument, the court noted that the plaintiff failed to seek an amendment to the scheduling order to allow for rebuttal experts.  *Id.* at *2 (Doc. 114-2 at 15).

In contrast, Alagasco provided the Unites Supplement more than a month before discovery ends.  Further, although Travelers now knows Dr. Gustafson's identity and the general contours of what his opinions would be, Alagasco has not yet sought to designate him as a rebuttal expert. Should Alagasco determine that rebuttal expert testimony is warranted on aerial photography (or any other topic, for that matter), it will seek relief from the Scheduling Order (Doc. 69).  Until Alagasco seeks to offer a rebuttal expert, discussions of excluding a possible

rebuttal expert are highly premature.  Accordingly, *Lavender* likewise provides no support for Travelers' Motion to Strike (Doc. 112).**4**

The other case Travelers cites is *Ponca Tribe of Indians of Oklahoma v. Continental Carbon Co.*, 2009 WL 457612 (W.D. Okla. 2009) (Doc. 114-2 at 18), which the Defendants appear to offer to limit Mr. Unites' ability to base his opinions on aerial photographs.  In *Ponca Tribe*, the expert in question was attempting to use the aerial photography to support or confirm modeled predictions of the transport of air emissions from an industrial facility.  2009 WL 457612, at *2-3 (Doc. 114-2 at 19).  The expert, however, had little training or experience with the interpretation of aerial photographs and had used them over the course of his career "on the order of ten" times.  *Id.* at *4, n. 4 (Doc. 114-2 at 21).  The court barred the expert from testifying regarding aerial photographs, agreeing he had "no training and only a minimal amount of experience doing such work."  *Id.* at *5.

---

[4] Alagasco is keenly sensitive to the Court's desire to keep this case on track for the February 6, 2012 trial date.  Alagasco has not disclosed Dr. Gustafson as a testifying expert because, at present, it does not believe there is any real controversy over what the aerial photographs show with regard to the basic history of the Huntsville Site.  If Travelers' expert opines that aerial photographs show something materially different than what Mr. Unites opines (namely that the former manufactured gas plant structures and equipment were dismantled or demolished periodically from the late 1940s to the late 1960s, see Doc. 113-2, p. 6), Alagasco may ask the Court to allow it to designate Dr. Gustafson as a testifying expert. If it does so, however, it will make every effort to work within the limitations created by the February 6, 2011 date for trial.

In contrast to the expert in *Ponce Tribe,* Mr. Unites testified at his deposition that he had used aerial photographs in assessing hundreds of sites, that he took classes at both the undergraduate and graduate level providing instruction on analyzing aerial photographs, and that he actually owns his own stereoscope for inspecting aerial photographs.  *See* **Exhibit D,** Transcript of Deposition of Dennis F. Unites, October 4, 2011, at 242-43.[5]  *See also Butron v. Centerpoint Energy,* 2011 U.S. Dist. LEXIS 58620 (S.D. Tex. May 31, 2011) (where expert psychologist relied on opinions of a psychiatrist who was not designated as an expert, and the expert was familiar with the methods and reasoning used and could independently assess whether the data was appropriate for his opinion, expert's reliance on psychiatrist's notes and diagnosis was not improper); *In re: Custom Distrib. Servs., Inc.,* 224 F.3d 235 (3rd Cir. 2000) (real estate appraiser allowed to testify as to property's value as a result of environmental contamination based on letters from EPA and an environmental report by a company commissioned by the owner of the site despite the fact that the appraiser did not make any findings on his own as to whether the property was contaminated).

Alagasco suggests that Travelers' Motion to Strike the Unites Supplement is not the appropriate vehicle to raise a challenge to an expert's opinion under Rule

---

[5] The deposition took place less than 30 days ago, so the official transcript is not yet available.  At the Court's direction, Alagasco will file the original transcript upon receipt.

702 or the bases of such an opinion under Rule 703 of the Federal Rules of Evidence. In any event, Mr. Unites is exceptionally well qualified to use aerial photographs and to rely on information from other aerial photography experts for purposes of developing opinions regarding historical operations at facilities under environmental investigation.

## CONCLUSION

For the reasons explained above, Travelers has suffered no cognizable harm as a result of Alagasco filing the Unites Supplement seven days after the date for its Rule 26(a)(2) disclosures. Therefore, Travelers' Motion to Strike (Doc. 112) should be denied.

Respectfully submitted this 13th day of October, 2011.

/s/ REBECCA W. PRITCHETT
REBECCA W. PRITCHETT
Alabama Bar No. ASB-5146-T83R
rebecca@pritchettlawfirm.com
FRED R. DELEON, JR.
Alabama Bar No. ASB-0761-R80D
fdeleon@pritchettlawfirm.com
Pritchett Environmental & Property Law LLC
3205 Lorna Rd., Ste. 101
Birmingham, Alabama  35216
Tel:  (205) 824-9092
Fax: (205) 824-8092

W. SCOTT LASETER
Georgia Bar No. 438515
Kazmarek Geiger & Laseter LLP
3490 Piedmont Road, NE
Suite 350
Atlanta, Georgia  30305
Tel:  (404) 812-0839
Fax: (404) 812-0845
slaseter@kglattorneys.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I have this 13th day of October 2011, served the foregoing *Alagasco's Response to Travelers' Motion to Strike* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record, among others:

>Andrew J. Sinor, Esq.
>Hand Arendall, LLC
>1200 Park Place Tower
>2001 Park Place North
>Birmingham, Alabama  35203

>Frank Winston, Jr., Esq.
>Steptoe & Johnson LLP
>1330 Connecticut Avenue, N.W.
>Washington, D.C.  20036

>/s/ REBECCA W. PRITCHETT
>REBECCA W. PRITCHETT
>Attorney for Plaintiff
>Alabama Gas Corporation