FILED

2011 Nov-03 PM 06:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Alabama Gas Corporation, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | 2:10-cv-1840-IPJ |
| Travelers Casualty and Surety | ) | |
| Company, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

## ALAGASCO'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF JUDGE BERNARD HARWOOD

The proposed testimony of former Alabama Supreme Court justice Bernard Harwood should be excluded because: (1) the main thrust of Judge Harwood's opinions would merely tell the jury what verdict it should reach with regard to Travelers' bad faith and would further constitute impermissible testimony on questions of law; (2) Judge Harwood's opinion regarding how the Alabama Supreme Court would rule on whether a PRP letter is a "suit" under standard insurance language is not based on a reliable methodology; and (3) allowing a former supreme court justice to testify on behalf of a private party on questions of mixed law and fact is likely to cause prejudice and confusion to the jury that outweighs any probative value Judge Harwood's opinions might have. Therefore, to the extent Judge Harwood's opinions are not rendered moot by the Court's

rulings on summary judgment,[1] Alagasco respectfully requests that Judge Harwood's testimony be excluded.

## I.    ARGUMENT AND CITATION OF AUTHORITIES

### A.    The Court's Familiar Role as Gatekeeper

Rule 702 of the Federal Rules of Evidence allows expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court set out the applicable standard for the admissibility of expert testimony under Rule 702.  "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

As the Eleventh Circuit has explained, determining the admissibility of expert testimony under Rule 702 requires a three-part inquiry examining whether:

---

[1]  Travelers has signaled its intention to file a motion for summary judgment on bad faith.  Therefore, and in light of evidence developed during discovery showing that Travelers knew its reason for denying a defense had no support under Alabama law, Alagasco expects to renew its motion for partial summary judgment on "normal" bad faith, which motion the Court had previously denied by finding questions of fact remained.  *See* Order, January 11, 2011 (Doc. 57).  If either party's motion were granted with regard to "normal" bad faith, it would appear to render moot Judge Harwood's opinions.

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted). Further, "[t]he burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *Frazier*, 387 F.3d at 1260.

As explained below, Judge Harwood's proposed testimony would merely tell the jury what result to reach and usurp the Court's role as the sole source of the law in this case. Additionally, Judge Harwood's opinion that would, in essence, predict how the Alabama Supreme Court might analyze a legal question is not based on a reliable methodology. Therefore, especially considering the potential prejudice and confusion inherent in a former justice taking the stand as an expert (discussed in more detail below), Judge Harwood's opinions should be excluded.

**B.    An Expert Cannot Merely Tell the Jury What Verdict It Should Reach or Usurp the Court's Role as the Sole Source of the Law**

**1.    Judge Harwood Cannot Tell the Jury That Travelers Did Not Commit Bad Faith.**

Judge Harwood intends to instruct the jury on what verdict to reach with regard to Travelers' bad faith. His expert report states, "It is my opinion that

Travelers did not commit the tort of bad faith under the circumstances of this case." *Expert Report of Bernard Harwood*, undated (hereinafter, "Harwood Report", attached as **Exhibit A**).    During his deposition, Judge Harwood confirmed:

> Q.  …do I understand correctly that you'll offer an opinion Travelers did not act in bad faith in this case?
>
> A.  Yes.

*Tr. of Dep. of Hon. Bernard Harwood*, October 26, 2011 (hereinafter, "Harwood Dep.", attached as **Exhibit B**), 40:25-41:1-3.

Many cases have held that an expert cannot testify with regard to whether or not an insurer committed bad faith. *See, e.g., Brooks v. J.C. Penney Life Ins. Co.*, 231 F. Supp. 2d 1136, 1141 (N.D. Ala. 2002) (excluding expert testimony to support a bad faith failure-to-pay claim that the insurance company "knew or should have known [its actions were] improper"). *See also Kubrick v. Allstate Ins. Co.*, No. 01-6541, 2004 U.S. Dist. LEXIS 358, at *53 (E.D. Pa. Jan. 7, 2004) (an expert "cannot testify as to the ultimate issue of whether Allstate acted in bad faith"); *Kraeger v. Nationwide Mut. Ins. Co.*, No. 95-7550, 1997 U.S. Dist. LEXIS 2726, at *3 (E.D. Pa. Feb. 28, 1997) (holding an expert "cannot testify that Defendant [insurance company] … acted in 'bad faith'").    As the Eleventh Circuit said in *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990), "merely telling [the] jury what result to reach is not helpful to the jury

4

and therefore is not admissible testimony."  Therefore, Judge Harwood should not

be allowed to testify with regard to whether or not Travelers committed bad faith.

**2.     Judge Harwood Cannot Instruct the Jury on the Interpretation of Language in the Insurance Policies.**

In addition to hoping he will tell the jury what verdict to reach on bad faith,

Travelers also wishes to have Judge Harwood instruct the jury on contract

interpretation.   More specifically, Travelers intends to have Judge Harwood

educate the jury on the meaning and operation of the terms "suit" and "claim"

under the relevant insurance policies.  As Judge Harwood testified:

> Q.  Do I also understand correctly that you'll offer an opinion
> that the policy language makes a distinction between the term . . .
> "suit" as it appears in the policy and the word "claim" as it
> appears in the policy?
>
> A.  Well, to the extent that I addressed that in the report, yes.
>
> Q.  And if I understand the way you address it in the report,
> you'll offer an opinion that the policy language makes a
> distinction between the term "suit" and the term "claim"?
>
> A.  Right.  Consistently throughout the policy, anytime either of
> those terms is used, that distinction is honored.

*Harwood Dep.* 41:4-19; and Harwood Report at 5.

Courts  regularly  exclude  proposed  expert  testimony  seeking  to  interpret

policy terms.  *See, e.g., Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d at 1541

(holding  that  the  "district  court  abused  its  discretion  by  allowing  [the  expert

witness] to testify about the scope of Aetna's duty under the policy," as the opinion that "Aetna had a duty to hire tax counsel in this case … was a legal conclusion, and therefore should not have been admitted"); *Lone Star Steakhouse & Saloon, Inc. v. Liberty Mut. Ins. Group*, 343 F. Supp. 2d 989, 1015 (D. Kan. 2004) (excluding expert testimony that the damages at issue "fell within the definition of an 'occurrence'" under the policy and that "Liberty Mutual had no basis to apply the exclusion for 'expected or intended injury'"); *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) (expert "testimony cannot be used to provide legal meaning or interpret the policies as written").  The Second Circuit Court of Appeals has explained:

> [t]he basis of expert capacity … may "be summed up in the term 'experience.'"  But experience is hardly a qualification for construing a document for its legal effect when there is a knowledgeable [gentleperson] in a robe whose exclusive province it is to instruct the jury on the law.  The danger is that the jury may think that the "expert" in the particular branch of law knows more than the judge – surely an inadmissible inference in our system of law.

*Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 512 (2nd Cir. 1977) (*quoting* Wigmore on Evidence § 555).  The Sixth Circuit Court of Appeals likewise stated, "[e]xperts are supposed to interpret and analyze factual evidence.  They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient, and it is the judge's duty to inform the jury about the law that is relevant to their deliberations."  *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986).

Travelers has itself been on the other side of this issue. In *Travelers Indemnity Co. v. Royal Oak Enterprises, Inc.*, No. 5:02-cv-58-Oc-10GRJ, 2004 U.S. Dist. LEXIS 29575, at *6-8 (M.D. Fla. Aug. 20, 2004), it was Travelers that moved to exclude the opposing party's expert on the grounds that he would usurp the court's role. The *Royal Oak* court explained:

> it is well settled that a determination of the extent of coverage under an insurance policy is a question of law to be decided by the Court. It is further noted that the legal obligations of the parties under a contract and the legal implications of the parties' conduct are likewise left to the Court's determination.

2004 U.S. Dist. LEXIS 29575, at *7 (footnotes omitted). While the *Royal Oak* court said it would be permissible to make "passing reference to a legal principle or assumption" in order to provide context for the "customs and practices of the insurance industry", it is impermissible to provide legal opinions on the construction of a contract, which is precisely what Travelers would have Judge Harwood do. *Id.* at *8.

## C. Judge Harwood's Opinion That the Alabama Supreme Court Would Follow the Approach Used by the California Supreme Court Was Not Based upon a Reasonably Reliable Methodology.

Travelers also intends to have Judge Harwood testify that whether a PRP letter constitutes a suit for purposes of triggering insurance coverage is "debatable under Alabama law." *Harwood Dep.* 42:13; and Harwood Report at 2. In performing the gatekeeper function, the trial judge must evaluate the "reasoning or

methodology underlying the testimony" and determine "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-593 (U.S. 1993).

Judge Harwood's principal methodology for formulating this opinion is his comparison of the approach taken by the Supreme Court of California in *Foster-Gardner, Inc. v. National Union Fire Insurance Co.*, 959 P.2d 265 (Cal. 1998), to the approach the Alabama Supreme Court takes in interpreting potentially ambiguous terms in insurance policies.  *See Harwood Dep.*, Dep. Ex. 1 at 5. Perhaps it is not surprising that *Foster-Gardner* is one of the few minority-rule cases Travelers has cited in this lawsuit.[2]  Based on his comparison of the California Supreme Court's approach in *Foster-Gardner* to the Alabama Supreme Court's approach, Judge Harwood opines that how the Alabama Supreme Court would rule is "at least fairly debatable," notwithstanding the decision in *Alabama Plating Co. v. USF&G Co.*, 690 So. 2d 331 (Ala. 1996).  *See* Harwood Report at 5.

However, Judge Harwood made clear in his deposition testimony that he has no basis to say whether the approach used by the California Supreme Court in

---

[2]  *See, e.g., Defs' Opp'n to Pl. Alagasco's Mot. to Bifurcate* 7-8 (Doc. 19); *Defs' Opp'n to Pl's Mot. for Partial Summ. J. on the Duty to Defend* 8 (Doc. 41); and *Defs' Opp'n to Pl's Mot. for Partial Summ. J. on Bad Faith* 14 (Doc. 61).  Indeed, Alagasco would observe that Judge Harwood's report reads more like an *amicus* brief sponsored by a party than a traditional expert report.

*Foster-Gardner* is any more or less like Alabama law than the approach used in other jurisdictions following the majority rule:

> Q.  . . . you didn't evaluate whether any other jurisdiction was equally as similar to Alabama as California?
>
> A.  No.
>
> Q.   And likewise you didn't evaluate whether any other jurisdictions were less similar to Alabama law than California law?
>
> A.  No.

*Harwood Dep.* 32:15-22.  As such, Judge Harwood lacks any basis to opine that the Alabama Supreme Court would be more likely to follow the reasoning of the California Supreme Court than the reasoning used by the dozen high courts in jurisdictions following the majority rule.

Equally as important, Judge Harwood failed to take a fresh look at the degree to which *Foster-Gardner* still represents even California law.  Late last year, the California Supreme Court qualified the formulation originally announced in *Foster-Garner*.   *See Ameron Int'l Corp. v. Insurance Co. of State of Pennsylvania*, 242 P.3d 1020 (Cal. 2010).  The uncertain future of *Foster-Gardner* is perhaps best illuminated by Justice Kennard's concurring opinion in *Ameron*:

> When it was decided in 1998, *Foster-Gardner* represented a distinctly minority view.  (See *Governmental Interinsurance Exchange v. City of Angola (N.D. Ind. 1998) 8 F. Supp. 2d 1120, 1130* [" 'The vast majority of courts around the United

9

States ... have found that all kinds of coercive administrative actions ... are "suits" covered by general liability insurance policies ... .' "].) Since *Foster-Gardner* was decided, no sister state court has adopted its "literal meaning approach," or its resulting "bright-line rule," in construing the term "suit" in a CGL insurance policy, while courts in nine sister states and federal courts applying the law of two other sister states have rejected that approach, instead adopting either the "functional equivalent" approach or the "hybrid" approach that the *Foster-Gardner* majority rejected. Thus, over the past 12 years, it has become increasingly apparent that *Foster-Gardner* lies far outside the mainstream of American insurance law.

Here, the court limits *Foster-Gardner*'s "bright-line rule" by holding that it does not apply to administrative agency adjudicative proceedings. The court reaches this result by concluding that the word "suit," when used in a CGL policy that does not define that word, is sufficiently ambiguous that it should be construed to protect the insured's reasonable expectation of coverage. (See maj. opn., *ante*, at p. 1386.) In so doing, the court implicitly rejects *Foster-Gardner*'s reasoning that "suit" unambiguously refers only to court proceedings. (*Foster-Gardner, supra, 18 Cal.4th at pp. 878-879*.) Although I would prefer that *Foster-Gardner* be overruled, the decision here is at least a step in the right direction.

242 P.3d at 1031 (parentheticals in original) (citations omitted).

Judge Harwood acknowledged that he could not recall seeing any cases critical of *Foster-Gardner*. *See Harwood Dep*. 32:23-33:12. This appears to be because Judge Harwood relied exclusively upon cases cited by the parties to this case rather than conducting an independent review of the case law. *Id*., at p. 33:2-

3.   Therefore, Judge Harwood must not have considered the California Supreme Court's decision in *Ameron*.[3]

In offering testimony, experts must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005) (quoting *Kumho Tire*, 526 U.S. at 152).   Comparing the degree to which the California approach is more or less similar to the Alabama approach relative to other majority jurisdictions would be fundamental to a reliable opinion on how the Alabama court might be expected to rule.   Similarly, confirming that *Foster-Gardner* remains on solid ground even in California would be an essential foundation for such opinion testimony.   Therefore, Judge Harwood lacks a reliable basis to testify that the Alabama Supreme Court might reasonably be expected to follow *Foster-Gardner*.

**D.    Allowing Travelers to Call Judge Harwood to the Witness Stand as a Former Supreme Court Justice and Trial Judge Risks Prejudice and Confusion on the Part of the Jury.**

---

[3]   Travelers might argue that *Ameron* was decided after it denied coverage.  Such an argument would fail for at least two reasons.  First, Justice Kennard's reasoning is based upon cases decided before Travelers denied coverage.   Second, since Travelers failed to get an independent coverage opinion prior to denying coverage, it should not be allowed to have Judge Harwood present to the jury the opinion Travelers wishes it might have secured before refusing to defend Alagasco.

Under Fed. R. Evid. 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  The Eleventh Circuit has emphasized the seriousness of this risk:  "[s]imply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse."  *Frazier*, 387 F.3d at 1263.

Once the impermissible opinions addressing legal issues or merely instructing the jury on the verdict it should reach are removed, the probative value of Judge Harwood's testimony appears limited at best.  However, the potential prejudice of allowing a former Alabama Supreme Court justice to offer testimony is very high, especially if Judge Harwood is identified to the jury as such.  "The prospect that a jury would attach undue weight to a judge's testimony is, indeed, readily apparent."  *Phillips v. Clancy*, 152 Ariz. 415, 420 (Ariz. Ct. App. 1986).  As the Seventh Circuit commented in *United States v. Frankenthal*, 582 F.2d 1102 (7th Cir. 1978), "calling a judge to give testimony in any proceeding is a very delicate matter" and must be "handled in a manner appropriate thereto and adequate to minimize any risks of unfair prejudice."  582 F.2d at 1107-8.  The Seventh Circuit endorsed the trial court's determination in that case that, although the judge's testimony had substantial and unique probative value, it was allowed

because he had offered only "brief and strictly factual testimony" and the trial court had issued a limiting instruction to the jury.[4]  *Id.* at 1108.

In contrast to *Frankenthal*, Judge Harwood has no unique factual information for the court or jury.  His opinions are legal in nature.  Therefore, the risks of prejudice and confusion far outweigh the probative value of Judge Harwood's testimony.  Other courts have expressed similar concerns.  In *Joachim v. Chambers*, 815 S.W.2d 234, 238 (Tex. 1991), the Texas high court found the trial judge was wrong to allow a judge to testify as an expert:

> A judge who testifies as an expert witness for a private litigant provides more than evidence; the judge also confers the prestige and credibility of judicial office to that litigant's position, just as a judge who testifies to the litigant's character.  Expert witnesses, unlike judges, rarely appear impartial; a party does not ordinarily call an expert whose testimony is unfavorable. An expert witness is offered to support a party's position, and if the expert is a judge, the jury may mistake that support for an official endorsement.  An expert witness is usually subject to more rigorous interrogation than a character witness.  Thus, the opportunity for strained relations between a judicial witness and a cross-examining attorney bent on discharging his duty to zealously represent his client is perhaps greater when the judge is testifying as an expert than as a character witness.  The danger that the judge will not be able to set aside the memory of the interrogation when the attorney appears before the judge in other cases is at least as real.  Even when there is no actual impropriety, the appearance of impropriety looms.

---

[4]  The judge was called in *Frankenthal* to testify regarding the contents of an ex parte conversation he allegedly had with the defendant's former counsel.

815 S.W.2d at 238.[5]    Therefore, the Supreme Court of Texas instructed, "[i]f defendants do not intend to exploit Judge Blanton's credibility as an experienced judicial officer, they should avoid it by selecting another expert; there is certainly no suggestion that Judge Blanton's testimony is irreplaceable.  If defendants do intend to exploit the appearance of a judge testifying in their behalf, then they should not be permitted to do so."  815 S.W.2d at 240.  *See also State v. Grimes*, 561 A.2d 647, 649 (N.J. Super. Ct. App. Div. 1989) (excluding a judge's testimony because there was "no justification for placing the great weight of his judicial office on the prosecution's side of the scales").

To be clear, like the court in *Joachim*, Alagasco does not mean to imply that Judge Harwood's "willingness to testify in this case is unethical in any way," 815 S.W.2d at 240, or to suggest that judges in Alabama should always be barred from giving expert testimony.[6]    Rather, Alagasco merely contends that Judge Harwood's taking the stand in this case to testify as a former (or part-time) justice of the

---

[5]  Although Judge Harwood's term expired, he is still re-commissioned from time to time.  *See Harwood Dep.* 19:12-20-23.  Therefore, Alagasco respectfully suggests allowing Judge Harwood to testify is tantamount to having an active (albeit part-time) supreme court justice take the witness stand.

[6]  The only absolute bar on testimony by judges found in Alabama's Canons of Judicial Ethics is in Canon 2(C) preventing judges from serving as a "character witness at any hearing before any court, or judicial or governmental commission," although that Canon does more generally instruct that a judge "should not lend the prestige of his office to advance the private interests of others."  While Judge Harwood would not intend to do so, it would be simply impossible for the jury not to transfer or impute his judicial prestige to Travelers.

Alabama Supreme Court with regard to what is at best a "mixed question of law and fact" (*see Harwood Dep.* 36:6-7), would be unduly prejudicial to an extent that far outweighs the probative value of his testimony.

## II.    <u>CONCLUSION</u>

Judge Hardwood's opinions constitute impermissible legal testimony, lack sufficient foundation and adequate methodology, and risk prejudice and confusion to the jury.    Alagasco respectfully requests that the Court exercise its "gatekeeping" function and exclude Judge Harwood's testimony from trial.    In the event the Court does not exclude Judge Harwood's testimony entirely, it should limit him to testifying on relevant factual matters within his area of expertise and, further, should bar Travelers from disclosing to the jury that he is a former trial court judge or supreme court justice.

This 3rd day of November, 2011.

/s/ REBECCA W. PRITCHETT
REBECCA W. PRITCHETT
Alabama Bar No. ASB-5146-T83R
rebecca@pritchettlawfirm.com
FRED R. DELEON, JR.
Alabama Bar No. ASB-0761-R80D
fdeleon@pritchettlawfirm.com
Pritchett Environmental & Property Law LLC
3205 Lorna Rd., Ste. 101
Birmingham, Alabama 35216
Tel: (205) 824-9092
Fax: (205) 824-8092

W. SCOTT LASETER
Georgia Bar No. 438515
Kazmarek Geiger & Laseter LLP
3490 Piedmont Road, NE
Suite 350
Atlanta, Georgia 30305
Tel: (404) 812-0839
Fax: (404) 812-0845
slaseter@kglattorneys.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2011, I electronically filed the foregoing ALAGASCO'S BRIEF **IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF JUDGE BERNARD HARWOOD** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

> Andrew J. Sinor, Esq.
> Hand Arendall, LLC
> 1200 Park Place Tower
> 2001 Park Place North
> Birmingham, Alabama 35203
>
> Frank Winston, Jr., Esq.
> Steptoe & Johnson LLP
> 1330 Connecticut Avenue, N.W.
> Washington, D.C. 20036

/s/ REBECCA W. PRITCHETT
REBECCA W. PRITCHETT
Counsel for Plaintiff
Alabama Gas Corporation

17