# Exhibit A

<u>Alabama Gas Corporation v. Travelers Casualty and Surety Company, et al.</u>
No. 2:10-cv-1840-IPJ (U.S. Dist. Ct., N. D. Ala.)

EXPERT REPORT OF BERNARD HARWOOD
ROSEN HARWOOD, P.A.
P.O. Box 2727 (35403)
2200 Jack Warner Parkway
Suite 200
Tuscaloosa, AL 35401

I have been asked to furnish my opinion concerning whether the claims of "bad faith" asserted against Travelers[1] is established by the facts of this case under the law of Alabama.

## Opinion:

It is my opinion that Travelers did not commit the tort of bad faith under the circumstances of this case. The complaint of Alabama Gas Corporation ("Alagasco") filed to institute the subject lawsuit, asserts in pertinent part that:

> The Travelers lacked reasonable legal or factual justification for its assertion that EPA's Information Request, Pollution Report, Liability Notice and Offer to Negotiate, and its repeated assertions that Alagasco was a liable party obligated to undertake a removal action at the Huntsville MGP did not constitute a "suit" within the meaning of the insurance policies at issue in this litigation. (Paragraph 66 of Alagasco's "Complaint for Declaratory Relief and Damages")

The insurance policy at issue is annexed through that complaint as Exhibit A. The complaint asserts that at the end of Travelers' process of investigation and evaluation, "Travelers wrote [to Alagasco] that it did not believe" that the EPA communications "constituted a 'suit' such that it did not believe that it had 'any potential defense obligations at this time.' " (Paragraph 50 of the Complaint)

The provisions of the exhibited insurance policy I find to be pertinent to this issue are as follows:

IV  DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS

It is further agreed that the Company shall

(a) Defend in the name and on behalf of the Insured <u>any suit</u> against the Insured alleging such injury, death, damage, or destruction and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent; but the Company shall have the right to make such investigation, negotiation, and settlement of any <u>claim or</u>

---

[1] As have the parties, I adopt the convention of referring to the defendants collectively as "Travelers."

suit as may be deemed expedient by the Company.

E.  NOTICE OF LOSS

Upon learning of an occurrence which might become the basis of a claim hereunder, the Insured shall give prompt written notice thereof with the fullest information reasonably obtainable at the time to the Company at its Home Office in St. Paul, Minnesota, or to its duly authorized agent. If suit is brought on account of such claim, the Insured shall promptly forward to the Company or its duly authorized agent all documents received relating thereto, or true copies thereof.

P.  SEVERABILITY OF INTERESTS

Whenever the term "the Insured" is used in this Policy, such term refers to the person or organization against whom the particular claim is made or suit is brought, but the inclusion herein of more than one Insured shall not operate to increase the limits of the Company's liability.

(Underlining added.)

Clearly, the policy distinguishes between "claim," on the one hand, and "suit" on the other hand. The Alabama Supreme Court is committed to the following approach to interpreting and applying contact terms:

> "Where contract terms are unambiguous, we do not look beyond the plain language of the contract to second-guess the intentions of the parties; nor will we speculate about what may have been the subjective expectations of the parties. See Harbison v. Strickland, 900 So.2d 385, 391 (Ala. 2004) (' "[I]t is elementary that it is the terms of the written contract, not the mental operations of one of the parties, that control its interpretation." ' (quoting Kinmon v. J.P. King Auction Co., 290 Ala. 323, 325, 276 So.2d 569, 570 (1973)) ); Turner v. West Ridge Apartments, Inc., 893 So.2d 332, 335 (Ala. 2004) (' "[A] court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state." ' (quoting Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala.1998)) ); Lilley v. Gonzales, 417 So.2d 161, 163 (Ala. 1982) ('[T]he law of contracts is premised upon an objective rather than a subjective manifestation of intent approach.')."

Title Max of Birmingham, Inc. v. Edwards, 973 So.2d 1050, 1056 (Ala. 2007), n. 1

These propositions were most recently reiterated and reaffirmed in Alabama Title Loans, Inc. v. White, [Ms. 1091642 and 1091677, July 15, 2011], ___ So.3d ___, ___, 2011 WL 2739652, at 5-6 (Ala. 2011).

2

Whether the Alabama Supreme Court will conclude that the term "suit" as used in the Travelers policy includes, or excludes, administrative pre-action directives of the type involved in this case, is an open question. If presented today, it would certainly represent a question of first impression for the Court. Thus, whether a PRP letter constitutes a "suit" for purposes of triggering insurance coverage presents a fairly debatable question under Alabama law.

The "Expert Report of Peter J. Hildebrand, J.D. & CPCU," submitted in this matter by Alagasco, opines concerning what "a reasonably competent claims professional" would do in five specified situations, the latter four of which relate to the mechanics of claims handling and investigation. I will not comment on those four categories, because I am not holding myself out as an expert concerning what a reasonably competent claims professional should do by way of investigating and evaluating a claim, other than with respect to the first category framed by Mr. Hildebrand to-wit:

> "Whether a reasonably competent claims professional would conclude that Travelers' position that it had no duty to defend Alagasco against claims by the EPA because they did not constitute a 'suit' had a reasonable or fairly debatable legal and/or factual justification under Alabama law?" (Hildebrand opinion, p. 6)

Mr. Hildebrand states it to be his opinion that:

> "A reasonably competent claims professional would conclude that Travelers' position that it had no duty to defend Alagasco against claims by EPA because they did not constitute a 'suit' had no reasonable or fairly debatable legal and/or factual justification under Alabama law." (Id. at 18)

In that regard, Mr. Hildebrand states, "it is well established that on environmental issues without clear precedent in Alabama, the Courts will follow the majority rule which would require Travelers to defend against the allegations in a PRP letter when there is a duty to defend a suit in the policy." (Id. at 19)

I respectfully disagree with that statement as being overbroad to the extent of misstating Alabama jurisprudence. Presumably, Mr. Hildebrand has in mind the position previously asserted by Alagasco in this case whereby Alagasco stated that the Alabama Supreme Court in Alabama Plating Co. v. USF&G Co., 690 So.2d 331 (Ala. 1996), "held that, when ruling upon insurance coverage issues it had not previously addressed, it would look to the 'clear majority of courts that have answered the questions . . . [and] adopt the majority position . . . .' " ("Alagasco's Brief in Support of Motion for Partial Summary Judgment on Bad Faith," filed January 11, 2011, at p. 11) Drawing upon my 48 years of experience as an Alabama practitioner, circuit judge and Supreme Court justice, I disagree that such a per se rule legitimately can be derived from Alabama Plating. In that case, in addressing certain issues of first impression relating to liability insurance policy interpretation, the Court noted the reasoning of "a narrow majority of state supreme courts" on the issue and expressed its agreement with that analysis. That led it to adopt that position. "We agree and, thus, adopt the majority position, which we consider to be the better reasoned approach." 690

3

So.2d at 334-35. (Underlining supplied.) This process of analysis by the Court is representative of the fact that it always attempts to adopt the legal position that is supported by reason and logic - "the better reasoned approach." In considering another of the issues of first impression presented in that case, the Court noted that "the policies in question are standard-form policies, issued nationwide, so the rulings in other states are of some guidance." (Id. at 336) (Emphasis supplied) The Court noted that "the clear majority of courts that have answered the questions have ruled against the arguments made by USF&G," and that "these rulings are consistent with prior decisions of this Court." That being so, the Court was inclined to adopt the majority position on the issues. "Thus, we adopt the majority position on each issue . . . ." (Id. at 336-337) In no-wise does the Court's analysis support Mr. Hildebrand's asserted bright line proposition that "on environmental issues without clear precedent in Alabama," the Alabama Supreme Court will automatically, in a knee-jerk fashion, "follow the majority rule." Rather, the Court always seeks to follow "the better reasoned approach." The Court is not reluctant to align itself with a minority position when it deems the same to be the better reasoned position. See e.g., Midwest Employers Casualty Co. v. East Alabama Health Care, 695 So.2d 1169, 1172 (Ala. 1997) (Adhering to the Court's previously adopted position regarding an insurance law issue, despite the fact that it represented "the minority position.")

In "Alagasco's Brief in Support of Motion for Partial Summary Judgment on Bad Faith," the elements for a bad faith action are quoted from pertinent case law, including element "(c) the absence of any reasonably legitimate or arguable reason for the refusal (the absence of a debatable reason)" and element "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason." (Brief at p. 7) Alagasco then posits that "Travelers' liability for 'normal' bad faith turns upon element 'c', whether the carriers' position that a PRP Letter was not a 'suit' was fairly debatable and, if not, element 'd', whether the insurer knew it was denying coverage on indefensible grounds." (Id. at 8) Alagasco further asserts that Travelers' would be guilty of an "abnormal" type of bad faith if it "had failed to make a good faith evaluation of Alabama law prior to denying coverage." (Id. at 12)

"Bad faith . . . is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of a known duty, i.e., good faith and fair dealing, through some motive of self-interest or ill will." Jones v. Alfa Mutual Ins. Co., 1 So.3d 23, 32 (Ala. 2008) (quoting from Singleton v. State Farm Fire & Cas. Co., 928 So.2d 280, 283 (Ala. 2005), quoting, in turn, from State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293 at 303-304 (Ala.1999)) " 'When a claim is "fairly debatable," the insurer is entitled to debate it, whether the debate concerns a matter of fact or of law.' " State Farm Fire & Cas. Co. v. Slade, supra., at 303 (Ala. 1999) (quoting from Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916, 924 (Ala.1981)) "In this instance, [the insurer] made a *prima facie* showing that it had been mistaken as to the applicable law; and, like most mistakes, [the insurer's] mistake could have been avoided by the use of more care. However, [the insured] presented no evidence to rebut [the insurer's] *prima facie* showing, i.e., no evidence that [the insurer's] 'mistake' was the product of a conscious intent to injure [the insured]." Harrington v. Guaranty National Ins. Co., 628 So.2d 323, 326-27 (Ala. 1993). In Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C., 703 So.2d 866, 870-71 (Ala. 1996), the Court concluded that the insurer had miscalculated how the Court would rule on the issue of first impression presented to it by the case. Although the insurer "incorrectly determined" that issue, "we cannot say that it acted in bad faith in making that determination and that there was no reasonable ground for dispute." (Id. at 871) In that regard, the Court reiterated the principles stated above that "[w]hen a claim is

4

fairly debatable, the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." (Id. at 870)

With respect to the "abnormal" type of bad faith claim, the deposition of Travelers' Senior Account Executive Gail Dalton, the author of the February 3, 2010, letter to counsel for Alagasco, advising that Travelers did not have any potential defense obligation at the time because Alagasco "has not been named in and served with a suit in the captioned matter," reflects that she had consulted internally concerning the matter, including with in-house counsel, and had concluded as of February 3, 2010, that "we had enough information to make our determination with respect to defense based on the information that was provided to us by Alagasco." (Dalton Dep., pp. 15-16, 24-25) She also had access to the "Munich Rebook," which would have revealed that the appellate courts of Alabama had not yet issued an opinion on the "suit" issue. (Id. at 26) For all that appears, experienced claims personnel at Travelers marshaled together the pertinent information, subjected it to reasonable cognitive review, and ultimately determined that the defense obligations relating to a "suit" did not extend to the kind of administrative "claim" presented at that stage.

It is my opinion that the issue of whether the directives issued to Alagasco by EPA would constitute a "suit," as opposed to the lesser level, broader category of "claim," was and is a debatable issue under Alabama law. I have read the various cases cited by the parties on point, and find that certainly Foster-Gardner, Inc. v. National Union Fire Ins. Co. of Pittsburg, PA, 18 Cal.4th 857, 957 P.2d 265, 77 Cal.Rptr.2d 107 (Cal. 1998), one of the cases relied on by Travelers, represents a comprehensive survey of the various legal and public policy considerations involved in a determination of whether EPA notices of the type involved in the instant case constitute a "suit" within the meaning of a CGL policy, and its conclusion "that a 'suit' is a court proceeding initiated by the filing of a complaint," is manifestly the result of a reasoned and logically compelling process. The cogent analysis employed by the Supreme Court of California in that case, and the full consideration it gave to all of the multitude of opposing and supporting arguments presented by counsel for the parties and their associated amici curiae, demonstrates that the issue is one that is at least "fairly debatable," such that Travelers is therefore entitled to debate it. The particular standards for insurance policy construction employed by the Supreme Court of California in the case essentially mirror the counterpart standards traditionally employed by the Supreme Court of Alabama and, whether one agrees or disagrees with the result the California Supreme Court reached, it cannot be disputed that it engaged in a careful cognitive evaluation of all of the precedent and arguments pertinent to the issue, and reached a decision that, at the very least, is arguably correct.

At a minimum, Travelers' reason for declining to offer a defense with respect to the EPA directives, was based upon arguable legal grounds which were fairly debatable (such that, once present, would remain true even though a trial judge in the subsequently ensuing litigation might correctly reject such arguments and direct a verdict for the insured) and Travelers did not commit the tort of bad faith in electing to debate the issue.

### Materials Reviewed:

I have been supplied with, and have reviewed, what appears to be a complete set of the filings

in this case, consisting of all pleadings, motions, orders, etc. (involving 90 separate items, and their respective attachments/exhibits, through August 11, 2011). I also have reviewed the Travelers' claim file, with Bates range T007580-T008153; the deposition transcript of Robert Harris, taken August 24, 2011; the deposition transcript of Gail Dalton, taken August 25, 2011; the expert report of Peter Hildebrand; document with Bates range of T008361-T008525; and document with Bates range KGL001858-KGL002017.

## My Qualifications:

For 48 years I have dealt extensively, as a practitioner or a judge, with issues of insurance policy interpretation. Subsequent to the 1981 formal recognition by the Alabama Supreme Court of the tort of bad faith in insurance policy contexts, I have also dealt extensively as a practitioner and a judge with the elements and applications of that tort. I have read over the years every opinion the Alabama Supreme Court and the Alabama Court of Civil Appeals have issued on the subject of bad faith and have given CLE talks on the subject to both the bench and the bar. Additionally, I draw on my varied legal experiences as detailed in my attached CV.

## Cases in Which I Have Testified as an Expert at Trial or by Deposition:

*Gary Duane Shearin v. Clearwater Enterprises, Inc. et al.*, in the Circuit Court of Colbert County, Alabama, Civil Action No.: CV 05-04

*United American Resources v. United Land Corporation and Jim Walter Resources, Inc.*, in the Circuit Court of Tuscaloosa County, Alabama, Civil Action No.: CV 2007-1395

*Ali Eslami, v. Allstate Insurance Company, et al.*, in the United States District Court for the Northern District of Alabama Southern Division, Case Number: 2:09-CV-245-RDP
*Hartford Fire Insurance Company v. The Mitchell Company, Inc. and Joseph J. Campus, III*, in the United States District Court for the Northern District of Alabama Southern Division, Case Number: 1:08-CV-62-KD-N

*Category 5 Management Group, LLC v. National Casualty Company, ACE American Insurance Company and Colonel McCrary Trucking, Inc.*, in the United States District Court for the Southern District of Alabama Southern Division, Case Number: 1:09-CV-00633-CG-B

## My Billable Role for This Assignment:

My fee is based on a billing rate of $425.00 per hour.

*R. Bernard Harwood* (signature)

Attachment

6

# R. Bernard Harwood



Robert Bernard Harwood, Jr., was born October 17, 1939. He attended the University of the South-Sewanee and then completed a B.S. degree in Commerce and Business Administration at The University of Alabama. He next attended The University of Alabama School of Law, receiving an L.L.B degree in 1963.

He practiced law for 28 years in Tuscaloosa, with a focus on litigation. In 1967 he joined with Gordon Rosen to form the law firm of Rosen and Harwood. During his years in private practice he also served as Deputy City Judge of Tuscaloosa, as a member of the Tuscaloosa County Civil Service Board, as a Special Assistant Attorney General for the State of Alabama and as a Lecturer in Law at The University of Alabama School of Law, teaching courses in trial advocacy. He was elected President of the Tuscaloosa County Bar Association, President of the Farrah Law Society/Order of the Coif of The University of Alabama School of Law, President of the Tuscaloosa Inn of Court and Chairman of the Litigation Section of the Alabama State Bar.

In 1991 he was appointed by the governor to fill a vacancy on the Circuit Court of Tuscaloosa County. He was elected to a full six-year term in 1992, and re-elected in 1998. In November 2000 he was elected an associate justice of the Alabama Supreme Court and served in that position from January 2001 to January 2007, when he voluntarily retired to return to Tuscaloosa. He rejoined his former law firm, then known as Rosen, Cook, Sledge, Davis, Shattuck & Oldshue, P.A. and the firm resumed its original name of Rosen Harwood. He is again teaching at the School of Law, teaching advanced evidence. He is also serving as Chair of the State-wide Committee on the Alabama Rules of Evidence, by appointment of the Supreme Court of Alabama; and as a member of the Court's Standing Committee on Civil Pattern Jury Instructions. The Court has several times "recommissioned" him subsequent to his retirement, to serve on it as a special justice or as a special judge on the Court of Criminal Appeals.

Mr. Harwood is a Fellow of the American Bar Foundation, a Fellow of the Alabama Bar Foundation, a Fellow of the American College of Trial Lawyers and is a "Diplomat" of the American Board of Trial Advocates. He continues as a member of the American, Alabama and Tuscaloosa County Bar Associations. He is the Governor's appointee to the Council of the Alabama Law Institute. In addition to his active trial practice, he serves as a mediator and an AAA approved arbitrator. He is also a member of the National Academy of Distinguished Neutrals. Selected for inclusion in <u>Alabama Super Lawyers</u> annually from 2009 to the present; selected for inclusion in <u>Best Lawyers in America</u>, 2011, 2012; named as the "Birmingham <u>Best Lawyers Appellate Practice Lawyer of the Year for 2012</u>.

Active in many civic, community, religions and local organizations, Mr. Harwood is a member of the Executive Board of the Black Warrior Council of the Boy Scouts of America and has served as Council President and President of the Council's Heritage Society. In 1993 he was awarded the Council's Silver Beaver Award. He served as President of the Exchange Club of Greater Tuscaloosa and currently is a member of the Exchange Club of Tuscaloosa. He is a member of the Leadership Association of The United Way of Tuscaloosa County and the Tuscaloosa and Alabama Cattlemen's Associations. In 2001, he was selected as Alabama Elected Public Official of the Year by the Alabama Chapter of the National Association of Social Workers.

Mr. Harwood and his wife Kathryn have three children, Bernard III, Richard and Eleanor, and four grandchildren. They are long-time members of Christ Episcopal Church in Tuscaloosa, where he has served three terms on the Vestry and three times as Senior Warden.

Mr. Harwood's areas of practice are:
- Civil Litigation in State and Federal Court
- Appellate Practice in State and Federal Court
- Mediation and Arbitration