IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Alabama Gas Corporation, ) | |
|                Plaintiff, ) | |
| v. ) | CIVIL ACTION NO.: |
| ) | 2:10-cv-1840-IPJ |
| Travelers Casualty and Surety ) | |
| Company, *et al.*, ) | |
|                Defendants. ) | |
| ) | |

## ALAGASCO'S BRIEF IN SUPPORT OF MOTION TO LIMIT THE EXPERT TESTIMONY OF KATHLEEN J. ROBISON

The proposed testimony of Travelers' second bad faith expert, Kathleen J. Robison, should be limited because her testimony at deposition demonstrates that she lacks a sufficient basis to opine on whether or not it is fairly "debatable" if the Alabama Supreme Court would consider a PRP Letter to be a "suit" triggering Travelers' duty to defend.  Additionally, Ms. Robison's testimony made clear that she lacks a sufficient basis to opine that Travelers acted reasonably when it said the EPA's Request for Information under section 104(e) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9604(e), (hereinafter, generally, an "information request") was not a "formal claim" and, therefore, the carrier was unable to evaluate its coverage obligations to Alagasco.  Accordingly, Alagasco respectfully requests that Ms. Robison's testimony at trial be limited to the other issues reflected in her expert report

regarding the timeliness and reasonableness of Travelers' claims handling activities and the degree to which those activities adhered to the company's procedures.

## I.    ARGUMENT AND CITATION OF AUTHORITIES

### A.    The Court's Familiar Role as Gatekeeper

Rule 702 of the Federal Rules of Evidence allows expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court set out the applicable standard for the admissibility of expert testimony under Rule 702. "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

As the Eleventh Circuit has explained, determining the admissibility of expert testimony under Rule 702 requires a three-part inquiry examining whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (cites omitted).

**B.   Ms. Robison's Opinion that It Is Fairly Debatable Whether a PRP Letter Would Be Considered a "Suit" under Alabama Law is Beyond Her Area of Expertise and Lacks Any Reliable Basis.**

Travelers intends to have Ms. Robison offer the opinion that "[t]he issue of whether or not the State of Alabama considered a PRP notification by the USEPA as a suit was fairly debatable at the time Travelers made its determination" to refuse to defend Alagasco. *See Expert Report of Kathleen J. Robison* at 2 (hereinafter, the "*Robison Report*," attached as **Exhibit A**). However, Ms. Robison lacks any education, training or experience that would give her special insight into that question. More importantly, her deposition testimony confirms that she has no basis for the opinion.

In terms of education, training and experience, Ms. Robison has never studied law. *See id.* at Ex. A, p. 2 (Ms. Robison's curriculum vitae shows she has an undergraduate degree in political science and history from Western College). While she has been a claims professional for many years, she testified to having only modest experience with environmental claims in general and that she could not recall ever being involved in a claim initiated by a PRP Letter. As Ms. Robison testified:

> Q. Am I correct to assume that you, other than the case that we're here to talk about today, you've never been involved

>    in a situation where an insurance company had to consider whether or not a PRP letter would be considered a suit under a general liability policy for purposes of the defense?
>
>    A. I can't say that in my history some -- someplace in time that didn't occur, but I can't say for sure.
>
>    Q. . . . sitting here today you don't recall any such instance?
>
>    A. . . . sitting here today I don't recall such instances.

*Deposition of Kathleen Robison*, November 2, 2011, 51:2-14 (hereinafter, "*Robison Dep.*," attached as **Exhibit B**).  When asked about her basis for her opinion to the effect that it's debatable whether the Alabama Supreme Court would consider a PRP Letter to be a suit, she identified three things.  First, she said she was relying on the Munich Re Book,[1] but she testified that she had never seen that source prior to this case.  *Id.*, at 99:2-4.  Second, she said she was relying on her discussions with Travelers' counsel.  *Id.*, at 104:1-3.  Third, she said she was relying on the views of Travelers' claims department.  *Id.*, at 104:4-10.  In summary, she testified:

---

[1]  The "Munich Re Book" bears the formal title "Environmental Coverage Case Law, 20th Edition, 2009," and is published by the reinsurer Munich Re America. *See Alagasco's Resp. to Travelers' Mot. for Partial Recons. of August 23, 2011 Order or, Alternatively, Mot. for Extension of Scheduling Order Deadlines*, Ex. C (Doc. 106-3).  It summarizes case law across the country on various environmental coverage issues, including whether or not PRP Letters trigger the duty to defend, and was used by Travelers' claims handlers. *See Dep. of Gail Dalton*, August 25, 2011, 26:4-22 (Doc. 106-1).

> Q. So the three things in there that you reviewed, the Munich Re Book, your discussion with counsel for Travelers, and the opinions of Travelers' claims department; is that right?
>
> A. Correct.
>
> Q. Is there anything else?
>
> MR. WINSTON [Counsel for Travelers]:  Objection, asked and answered.
>
> A. Not that I recall.

*Id.*, at 104:11-19.

In a case involving allegations of bad faith on the part of an insurer, it is obviously inadequate for the expert witness to merely:  (1) review a book they had never seen before, which summarized legal opinions; (2) talk to the attorneys for the insurance company (the ones who hired the witness); and (3) take into account the views of the very claims department accused of acting in bad faith.  The trial court's gatekeeper function calls for it to evaluate the "reasoning or methodology underlying the testimony" and determine "whether that reasoning or methodology properly can be applied to the facts in issue."  *Daubert*, 509 U.S. at 592-593.  Experts "must [employ] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005) (quoting *Kumho Tire*, 526 U.S. at 152).

As the Eleventh Circuit has also made clear, "[t]he burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *Frazier*, 387 F.3d at 1260. The Committee Note to the 2000 Amendments of Rule 702 of the Federal Rules of Evidence advises: "if the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *See also Frazier*, 387 F.3d at 1261. Accordingly, Ms. Robison lacks any basis to opine regarding whether Travelers had a "debatable" reason for denying coverage when it asserted that a PRP Letter was not a suit.

**C.     Ms. Robison's Opinion that Travelers Acted Reasonably in Taking the Position That a Request for Information from EPA Was Not a "Formal Claim" Sufficient to Allow the Carrier to Evaluate Its Coverage Obligations Is Likewise Beyond Her Area of Expertise and Lacks Any Reliable Basis.**

Ms. Robison also proposes to opine that Travelers acted reasonably when it took the position that the EPA's Request for Information sent to Alagasco was not a "formal claim" and, as a result, Travelers could not determine whether it had any coverage obligations in 2008.[2] *See Robison Report* at 4. *See also Robison Dep.*,

---

[2] To provide some context for this proposed testimony, Travelers elected to rest on its view that EPA's Request for Information was not a "formal claim" and

Ex. 6 (Letter from Travelers' Nicole Tarczanin to Alagasco's Paige Goldman dated November 10, 2008, attached hereto as **Exhibit C**).  Much like her inexperience with PRP Letters, Ms. Robison testified that she could not recall ever having been presented with a claim involving an EPA Request for Information:

> Q. What's the basis for that opinion?
>
> A. The basis for that opinion is that the -- at this point in time the US EPA is asking for information and had not presented a claim for damages, it was -- it was simply looking for information, stating that there would be a claim.
>
> Q. Did you resort to any reference materials to make that evaluation, meaning the evaluation this was a reasonable statement?
>
> A. No.
>
> Q. Okay. Did you review the information requested?
>
> A. Yes.
>
> Q. So to be sure I'm understanding, the basis for your opinion is that in your review of the information request it didn't make a demand for damages, is that -- did I understand that right?

---

proceeded to do virtually nothing with regard to assessing Alagasco's right to coverage between the end of 2008 and early 2010, thereby leaving Alagasco to deal with the EPA's claims on its own. *See, e.g., Robison Depo.* at 94:15-99:1. Alagasco contends that Travelers' failure to investigate the claim, its failure to submit the information it already had in hand to a cognitive review, its failure to follow its own procedures, and its misrepresentations to Alagasco with regard to whether it was actually reviewing Alagasco's claim all constitute "abnormal" bad faith within the meaning of cases like *Employees' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 976 (Ala. 1998).

>A. It didn't present a claim, it was asking for information.
>
>Q. And -- and other than your review of the information request do you have any other basis for your review that this was a reasonable position on the part of Ms. Tarczanin?
>
>A. It would be the -- it would be my – based on my past experiences in claims handling and on the documents that I reviewed.
>
>Q. In regard to your past experience, I believe you testified earlier that you couldn't recall a particular instance where you had to consider a request for information; did I get that right?
>
>A. That's correct.

*Robison Dep.* 112:7-113:9.

Of course, had either Travelers or Ms. Robison made a closer review of the Munich Re Book, they would have seen that the book reported that at least some jurisdictions not only consider information requests from environmental agencies to constitute claims but also view them as "suits" triggering the duty to defend. *See* Munich Re Book at 7 (describing the holding in *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305 (Minn. 1995)). More importantly, the Munich Re Book reports no cases supporting the notion that a Request for Information is not a "formal claim" and, as far as Alagasco's research has found, there are no such reported cases. In any event, the mere review of a Request for Information by a witness with no recollection of being involved in any other claim involving such a

question and who did little to no independent research regarding the subject is not a sufficient basis for an expert opinion.

As suggested in footnote 2, above, Alagasco will vigorously contest the remainder of Ms. Robison's opinions with regard to whether Travelers timely commenced and properly carried out its evaluations of Alagasco's right to a defense and with regard to whether Travelers really followed its own procedures. Alagasco believes, however, that the jury will be well able to assess credibility and weigh the evidence on these points. Therefore, Alagasco does not seek to prevent Ms. Robison from testifying on the other issues identified in her report.

## II. CONCLUSION

Ms. Robison lacks sufficient expertise and has no adequate basis to give opinions on whether or not it is "debatable" if the Alabama Supreme Court would consider a PRP Letter to be a "suit" triggering Travelers' duty to defend, or on whether Travelers was reasonable to assert that a Request for Information from the EPA was not a "formal claim" sufficient for the carrier to determine its potential coverage obligations to Alagasco. Therefore, Alagasco respectfully requests that Ms. Robison's testimony be limited to the other issues reflected in her expert report regarding the timeliness and reasonableness of Travelers' claims handling activities and the degree to which those activities adhered to the company's procedures.

This 9th day of November, 2011.

/s/ REBECCA W. PRITCHETT
REBECCA W. PRITCHETT
Alabama Bar No. ASB-5146-T83R
rebecca@pritchettlawfirm.com
FRED R. DELEON, JR.
Alabama Bar No. ASB-0761-R80D
fdeleon@pritchettlawfirm.com
Pritchett Environmental & Property Law LLC
3205 Lorna Rd., Ste. 101
Birmingham, Alabama 35216
Tel: (205) 824-9092
Fax: (205) 824-8092

W. SCOTT LASETER
Georgia Bar No. 438515
Kazmarek Geiger & Laseter LLP
3490 Piedmont Road, NE
Suite 350
Atlanta, Georgia 30305
Tel: (404) 812-0839
Fax: (404) 812-0845
slaseter@kglattorneys.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this *ALAGASCO'S BRIEF IN SUPPORT OF MOTION TO LIMIT THE EXPERT TESTIMONY OF KATHLEEN J. ROBISON* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

>Andrew J. Sinor, Esq.
>Hand Arendall, LLC
>1200 Park Place Tower
>2001 Park Place North
>Birmingham, Alabama 35203
>
>Frank Winston, Jr., Esq.
>Ruth Kochenderfer, Esq.
>Paul Janaskie, Esq.
>Steptoe & Johnson LLP
>1330 Connecticut Avenue, N.W.
>Washington, D.C. 20036

Done this 9th day of November, 2011.

>/s/ REBECCA W. PRITCHETT
>REBECCA W. PRITCHETT
>Attorney for Plaintiff
>Alabama Gas Corporation