FILED
2011 Nov-09 PM 03:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A

## MALECKI DEIMLING NIELANDER & ASSOCIATES, LLC

### Risk, Insurance and Management Consultants

Kathleen J. Robison, CPCU, ARM, AIC
229 Golanvyi Trail
Vonore, TN 37885-2660
423.884.3226
423.404.3538 cell

Expert Report of Kathleen J. Robison in the matter of Alabama Gas Corporation v. Travelers Casualty and Surety Company, et.al., No. 2:10-cv-1840-IPJ; U.S. Dist. Ct. N.D. Ala.

I, Kathleen J. Robison, have been retained on behalf of the defendants in the above captioned litigation entitled Alabama Gas Corporation (Alagasco) v. Travelers Casualty and Surety Company, et. al. (Travelers). Based upon my review of various documents, I have developed opinions relating to the facts and circumstances surrounding the adjustment process by Travelers in the handling of Alagasco's claim arising from an EPA's request for information to clean up hazardous waste from the Huntsville, Alabama Manufactured Gas Plant (MGP) site.

### QUALIFICATIONS

I am an insurance management consultant with Malecki Deimling Nielander & Associates, LLC. In this capacity, my work focuses on the training of claim adjusters, agents and underwriters on various policy forms and best practices. I also perform various customized industry operational process assessments. For ten years before becoming a consultant, I served as the Vice President of Claims and Operations for DaimlerChrysler Insurance Company. Before that, I served as Vice President of Claims for Bankers and Shippers Insurance Company and Tri-State Insurance Company and as a Branch Claims Manager for Citizens Insurance Company. I began my career in the insurance industry as an adjuster.

I have had substantial experience managing property and casualty claim operations as well in adjusting claims. As an educator, claim manager, and adjuster, I have substantial knowledge, training, education and experience that qualify me to testify on the subjects addressed below. My Curriculum Vitae is attached as Exhibit A.

### DOCUMENTS REVIEWED

Exhibit B lists the documents that I have reviewed and relied upon in the formulation of my opinions.

1

<u>EXPERT WITNESS CASE LIST BY TRIAL OR BY DEPOSITION</u>

Exhibit C lists expert witness cases by trial or by deposition.

<u>COMPENSATION</u>

I am being compensated at the hourly rate of $250.00.

<u>SUMMARY OF OPINIONS</u>

I have been requested to review the facts and circumstances surrounding Travelers' claims handling concerning the investigation and the declination of defense. I have been requested to consider whether Travelers' claims practices and activities in this matter were reasonable, proper and met accepted industry claims handling customs and practices.

I make the following opinions at this time based upon my analysis of the documents (Exhibit B) reviewed.

1. Travelers promptly and properly commenced its investigation into Alagasco's claim by timely undertaking the archival records search for any potentially applicable policies and any documents related to the 1998 Alagasco notice.

2. Travelers' properly advised Alagasco of its activities and requested proper information from Alagasco. Travelers properly and timely advised Alagasco that it was continuing its coverage review in conjunction with any potentially applicable policies while reserving its rights and would advise of its decision when completed.

3. Travelers' investigation was proper. Travelers had the right to decide the manner and method by which to conduct its investigation.

4. Travelers' adhered to its procedures in its determination that a defense would not be extended. The Travelers procedures were in accordance with industry standards and practices. The issue of whether or not the State of Alabama considered a PRP notification by the USEPA as a suit was fairly debatable at the time Travelers made its determination. Travelers actions were reasonable and in accordance with industry standards and practices.

### *Travelers Timely Commenced the Investigation*

On November 4, 2008 Travelers Special Liability Group (SLG) received from C. Paige Goldman, an attorney at Energen Corporation a letter dated 10/29/08 advising that Alagasco, an operating unit of Energen had received from the United States Environmental Protection Agency (EPA) an information request concerning the Huntsville Gas Co. site and a pollution report; copies of both were attached. Ms.

2

Goldman stated that Alagasco had notified Travelers on 06-02-1998 regarding potential environmental concerns associated with the Huntsville site.

Ms. Goldman stated that "Alagasco believes EPA's Information Request may constitute a claim under policies issued by Travelers. Therefore, in addition to serving as a supplemental notice of the facts and allegations reflected in the enclosed EPA documents, to the extent Traveler's policies include a duty to defend Alagasco please consider this letter as a tender of the defense and a demand for coverage." (T000003) Ms. Goldman also advised that Alagasco was seeking an extension to the EPA's 30 day deadline to answer the EPA's Information Request.

The EPA requested in an undated letter with a date stamp of Oct 03 2008 that Alagasco supply information by answering the questions on Enclosure A, titled "First Information Request Huntsville Gas Co. Site. " (T000005, T000008)  The Pollution Report gave a site description with history.  According to this document the Huntsville site as a manufactured gas plant dates from 1856 to sometime between 1950 - 1970 during which time the plant site changed ownership and/or was disassembled.  The pollution report further stated that during the 1970's the Huntsville Housing Authority built a development called Searcy Homes Development that occupies a portion of the Huntsville Gas Co. site. (T000016)  The pollution report described the environmental studies and analyses conducted since February 2003. (T000017)

Ms. Goldman did not identify the policies that Alagasco believed it had with Travelers. She did attach a list of policies with Aetna Casualty & Surety Co. from 2/1/44 to 10/10/45 and 7/10/85 - 10/10/86. (T000004)  At the same time Ms. Goldman had sent a similar letter to St. Paul. (T000001-000002)  As St. Paul and Travelers became affiliated in about 2004, Travelers responded to both letters.   Ms. Goldman did not include copies of any policy forms with her letters.

This matter was  assigned to Nichole S. Tarczanin, Assistant Account Executive , in Travelers' Special Liability Coverage Unit (SLCU).  The responsibility of the SLCU is "coverage analysis for claims tendered under commercial liability insurance policies that arise from waste disposal scenarios or certain other long-term pollutant release scenarios." (Harris deposition p. 13)

To perform a coverage analysis one must review all the complete policies that are alleged to be applicable to the claim at issue with all the terms, conditions and endorsements.  The first step is to acquire all the potentially applicable policy information.  For this claim, this was not an easy task.  Alagasco was alleging policies from 1944 to 1986; a span of 42 years that extended as far back as 64 years.

Complicating the search process was that the information sought was for  manuscript type policies.  Manuscript policies are those designed to meet the specific needs of businesses with specialty exposures.  A manuscript policy contains non standardized forms that are uniquely and specifically tailored to meet the individual coverage needs

of the insured entity. They are written using wording requested and agreed upon by the insured entity. The policies claimed by Alagasco were manuscript.

During the period claimed by Alagasco, manuscript policies were produced through manually typing the requested information. The insurer would then file the policy. Once a policy was no longer an active policy, it would be sent and stored in a record archives area generally off site. These records would periodically be purged and destroyed in accordance with record retention policies.  It is customary for a company to retain records for an established period of time. It is not customary to retain records indefinitely, particularly paper records.

Travelers timely began the search for potential applicable policies. (T001042 - 001108) Ms. Tarczanin also initiated a timely records archival search for the 1998 Alagasco notice that Ms. Goldman referenced. The 1998 Alagasco notice was over 10 years old and would be a paper file.

Ms. Tarczanin's search for alleged policies was a necessary first step, in order to determine the terms and conditions of policies that Alagasco asserted in their claim. Gathering policy information is conducting an investigation into both the duty to defend and the indemnity obligation.

Travelers promptly and properly commenced its investigation into the claim of Alagasco by  timely undertaking the archival records search for the alleged policies and the 1998 Alagasco notice.

### Travelers' Acknowledgement, Communications

 On 11/10/08 Ms. Tarczanin acknowledged receipt of Ms. Goldman's letters. She properly advised Ms. Goldman that her initial activity  was to conduct  records research for any potential applicable policies issued to Alagasco. Ms. Tarczanin requested  Ms. Goldman to send "copies of any potentially applicable policies, or any other information respecting policies we may have issued to Alagasco.." (T000022) Ms. Tarczanin also advised Ms. Goldman that she had not located records of the 1998 Alagasco notice and requested that Ms. Goldman forward such for her review. This was a reasonable request and in accordance with standard industry practices. The early sharing of such information can greatly assist in the search for old records and the investigation process.

As the EPA was seeking information from Alagasco with its first request for information, Ms. Tarczanin advised Ms. Goldman that the EPA's request for information letter was not a formal claim and stated "Therefore, we cannot determine our potential coverage obligations to Alagasco unless and until such a claim or lawsuit is received." In my opinion, this was a reasonable statement. It did not deny coverage. At this point, 6 days after the receipt of Ms. Goldman's notice letter, the applicable Alagasco policy search over a period of 50-60 years had not yielded results. To determine coverage

4

requires that all potentially applicable policies be located, reviewed, analyzed and deemed to be applicable to the claim being made.

Ms. Tarczanin reserved Travelers rights as to coverage pending location and review of alleged policies related to the claim being made by Alagasco. Ms. Tarczanin properly informed Alagasco that there may be coverage issues. As Mr. Harris explained (Harris deposition p. 85) the purpose of the reservation of rights language is to inform "the policyholder that there may be coverage issues. Coverage may be limited, may be unavailable for the matter. It's not clear from the information provided that the matter is a covered claim." As the alleged policies had not yet been located and reviewed, Travelers was properly putting Alagasco on notice that coverage issues could arise.

Travelers' timely acknowledged Alagasco's notice of the EPA's request for information. Travelers' properly advised Alagasco of its activities and requested proper information from Alagasco.

During the remainder of November 2008, Travelers timely responded to Alagasco's letter and phone inquiries. Travelers kept Alagasco advised of the continuing search for policy records and the need to review Alagasco's notice in conjunction with the potentially applicable policies when located in order to determine its coverage position and continued to reserve it rights. When asked for input on Alagasco's 11/05/08 meeting with the EPA where EPA invited Alagasco to enter into an administrative order on consent (T000026-27); Travelers (Gail P. Dalton supervisor to Ms. Tarczanin) advised Alagasco "to act in a manner that it believes will best protect its interests with respect to the USEPA's AOC." (T000066) This was a proper and appropriate response by Travelers.

On 12/12/08 Ms. Goldman wrote to Ms. Dalton stating "...Alagasco looked forward to learning Travelers' coverage position and, in the mean time, as you advised we will act in a manner we believe will best protect our interests with regard to negotiating any administrative order on consent with the United States Environmental Protection Agency and any other parties that may join in those discussions." (T000071)

In my review, I did not see documentation indicating that Ms. Goldman sent any copies of any potentially applicable policies or any other information regarding policies.

Around 12-03-08, Travelers internally located the files regarding the 1998 Alagasco notice regarding potential environmental concerns associated with the Huntsville site (as well as other sites). The file contained over 4600 documents. Within it were pieces of policy information and underwriting materials referencing policies that may have been issued to Alagasco. There did not appear to be any complete copies of any St. Paul policies issued to Alagasco. There were no documents that indicated that the copies of the various policy forms were a complete policy. The file was copied and sent to SLCU. Ms. Tarczanin stated that she would have reviewed each document commencing shortly after receiving the file in boxes containing the 4600 plus documents. (Tarczanin

deposition p. 43)  This was a time consuming and necessary task in attempting to recreate the complete potentially applicable policies.

Travelers had promptly undertaken a records search for potential applicable policies that was still in process.  It was obtaining information concerning the site damage facts from Alagasco. Travelers was conducting a proper investigation.

### 2009 Communications

In a letter dated 01/29/09 Ms Goldman wrote to Travelers that Alagasco "expected to have another meeting with USEPA in the next few weeks to discuss their proposed AOC."  And that "we will continue to act in a manner we believe will best protect our interest per your November 25, 2008, instructions." (T001328)  On 2/03/09 Ms. Tarczanin promptly acknowledged Ms. Goldman's letter and continued the investigation with the records search for potentially applicable policies issued to Alagasco.

In the documents reviewed, the next communication from Alagasco was not until almost 5 months later on 06-22-09.  This was from W. Scott Laseter, outside counsel for Alagasco.  Mr. Laseter updated Travelers that the there had been no substantive exchanges with the EPA from 1/28/09 to 06/15/09 and  the EPA now wanted to move forward; that Alagasco's consultant had prepared a preliminary estimate range of $3.3 to $7.1 million and that Alagasco had discussions with the Huntsville Housing Authority on the appropriation of costs.  He also renewed " Alagasco's demand for a defense of this claim and a statement of Traveler's coverage position." (T000085)

Ms. Tarczanin promptly responded on 06-24-09 advising that Travelers continued in its review "... in conjunction with any potentially applicable policies issued to Alagasco or any other entity under which Alagasco may qualify as an insured.." and advised Alagasco to "act in a manner that it believes will best protect its interests with respect to this matter." (T000089)

On 06-25-09 Mr. Laseter wrote to Travelers with copies of the USEPA's 06-23-09 "Notice of Potential Liability and Offer to Negotiate for Removal Action" letter and Alagasco's consultant, GEI, Inc.'s opinion of costs. T000095-000135)  Mr. Laseter also spoke with Gail Dalton on 06-26-09.  Ms. Dalton promptly advised Mr. Laseter of the continuing review of any potentially applicable policies and once the review was completed, Travelers would contact Alagasco regarding its coverage position and restated that Alagasco should proceed in its own best interests. (T000169)

To perform a coverage analysis in this matter was tedious and complex.  It required a thorough review of all the complete policies that were alleged to be applicable to the claim at issue with all the terms, conditions and endorsements.  To conduct such a review necessitated locating and assembling complete versions of each alleged policy. (Tarczanin deposition p. 47)  Although requested early on by Travelers, Alagasco had yet to send Travelers any policy copies from the time period claimed of 1944 to 1986.

Travelers continued to investigate the claim being made by Alagasco. It continued its efforts to recreate coverage information through ongoing searches of its archived records for potentially applicable policies issued to Alagasco or another entity under which Alagasco may qualify as an insured during the time period 1944 to 1986. (T001357-001360; T000271-000295) Based upon the number and age of the alleged policies, it was a time consuming task that could take many months and at times exceed a year. (Tarczanin deposition p. 47) Travelers continued to investigate in its ongoing review of new and additional information sent by Alagasco in its communications.

Alagasco and Travelers continued their communications throughout 2009 in writing and telephone conversations. (T000171) Alagasco advised Travelers of its discussions with the EPA on the administrative order on consent and requested Travelers' coverage decision. Travelers properly and timely advised Alagasco that it was continuing its coverage review in conjunction with any potentially applicable policies while reserving its rights and would advise of its decision when completed.

### Travelers Decision Not to Extend Defense

By early 2010 Travelers SLCU had located a number of potentially applicable policies issued to Alagasco. They were primary policies for 07/10/67 to 07/10/83; Umbrella Excess Liability for 07/10/67 to 07/10/83; Excess Third Party and Excess Overlayer Indemnity policy for 07/10/84 to 07/10/86 and 07/10/85 to 06/30/86.  Copies of policies prior to 07/10/67 had not been located.

The most complete copy of a St. Paul policy in the historical information was policy number 501JB1000 which was issued to Alabama Gas Corporation with a policy period from 07-10-67 to 07-10-70 and allegedly renewed until 07-10-84. The pertinent portions of the policy relating to Travelers handling of this matter are in my opinion:

*"In consideration of the provision hereinafter expressed concerning the payment of premium, and subject to the limits of liability exclusions, conditions and other terms of this policy.*

*INSURING AGREEMENTS*

*I. COVERAGE:*

*COVERAGE D  PROPERTY DAMAGE LIABILITY OTHER THAN AUTOMOBILE*

*To pay any loss by reason of the liability imposed by law or contract upon the Insured for damages because of injury to or destruction of property, including the loss of use thereof.*

*IV. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS*

*It is further agreed that the Company shall*

*(a) Defend in the name and on behalf of the Insured any suit against the Insured alleging such injury, death, damage, or destruction and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent; but the Company shall have the right to make such investigation, negotiation, and settlement of any claim or suit as may be deemed expedient by the Company.*

*The Company agrees to pay the expenses incurred under Subdivision (a) and (b) of this section in addition to the applicable limit of liability of this policy."*

Also under INSURING AGREEMENTS is Section V. DEFINITIONS where selected words/phrases used within the policy are specifically defined. They are: Bodily Injury, automobiles, trucks, trailers, semi-trailers, occurrence and Advertising Liability. (T000296-000304)

The policy does not define the word "suit". When a word is not defined within the policy, it is the standard custom and practice to apply the plain meaning of the word. It is reasonable to conclude that the EPA's First Information Request did not qualify as a suit within the language of the policy. And therefore, the EPA's First Information Request did not trigger the duty to defend under the policy language.

Further the policy gives the Company the right to investigate, negotiate and settle any claim or suit in the manner it believes is the most suitable based upon the individual matter at hand. Travelers and not Alagasco has the right to decide the manner and method to conduct its investigation. In the claims investigation process concerning commercial liability insurance that arise from waste disposal or long-term pollutant release, it is custom and practice to rely on the information prepared by the insured in their response to the EPA's request for information and the insured's on site investigation. It is also custom and practice for the insured to provide status reports concerning the type and extent of work required to be done. It is not necessary for the investigation done by the insurance company to duplicate what the insured has already undertaken as long as the company deems that information sufficient.

In January 2010, Ms. Dalton assumed the handling of the Alagasco claim. Ms. Dalton handled the Alagasco claim and the decision not to extend defense in accordance with Travelers procedures and appropriate claims handling procedures. Ms. Dalton did a review of the information received from Alagasco in relationship to the policy language and coverages provided in the potentially applicable policies that had been located to make a coverage determination concerning Alagasco's request that Travelers provide defense. Travelers SLCU coverage determination process involves multiple parties. The account executive and supervisor will consult throughout the investigation. The supervisor may also include his/her direct supervisor. Others in the department are frequently consulted. Attorneys are available to the SLCU for consultation and input. The process is a collaborative utilization of the resources available to the SLCU. (Robert Harris deposition p. 24, 100)

8

When the coverage question involves a request from an insured for defense when the matter is not in suit, the SLCU's general procedure is that the "file handlers and supervisors will consult with counsel to determine whether there is any legal authority that would require us to treat this non-litigation matter as a suit, and this is assuming that the policy language we're looking at has a defense clause that require a suit in order to trigger defense coverage. (Robert Harris deposition p.37-38)

On 02-30-10 Ms. Dalton sent Alagasco a letter stating that she had reviewed the policies issued to Alagasco that had been located. She advised that not all the alleged policies had been located and requested that if Alagasco had any copies or information concerning these to forward them to her for review. Ms. Dalton discussed the facts of the claim by the USEPA against Alagasco and the USEPA's notification to Alagasco around 06/09 where it considered Alagasco to be a potentially responsible party ("PRP") concerning the contamination at the Huntsville MGP site.

Ms. Dalton advised Alagasco that "The insuring agreement of each of the primary-level policies requires that we defend suits seeking damages because of bodily injury or property damage. Based upon my review of the information submitted to date, Alagasco has not been named in and served with a suit in the captioned matter. As such, we do not have any potential defense obligation at this time. Should Alagasco be served with a suit, you should immediately forward a copy of the suit and proof of service to my attention for review and consideration."

She further stated that the investigation of the claim facts would continue under a complete reservation of rights in order to determine the extent of Travelers indemnity obligation under the policies. To assist in the investigation she requested five specific sets of information from Alagasco. (T000172–000176)

Ms. Dalton in arriving at the defense coverage determination followed Travelers' procedures. She sought input of counsel on the question of whether or not a PRP letter was a suit under Alabama law. (Dalton deposition p 24) She conducted research and consulted the Munich Re book for guidance concerning the position of Alabama state court decisions on the standing of a PRP letter as a suit. (Dalton deposition p 26) Her activities were proper and reasonable in accordance with industry custom and practice.

At the time of the decision the Alabama Supreme Court had not (and still has not) ruled on the issue of whether or not a PRP notice from the USEPA was considered a suit. This was a fairly debatable issue. Ms. Dalton had consulted resources such as the Munich Re book on the duty to defend under each state. Ms. Dalton had consulted with counsel. Ms. Dalton's determination that defense would not be extended in this matter to Alagasco followed Travelers procedures which were proper and reasonable. As the issue was fairly debatable, Travelers actions were reasonable.

After Travelers made its decision on the duty to defend, it continued its indemnity investigation. Travelers enlisted the assistance of an investigator with its indemnity investigation.

9

On 7/9/10 Alagasco responded by filing suit against Travelers.

## Conclusion

Travelers promptly and properly commenced its investigation into the claim of Alagasco by timely undertaking the archival records search for the potentially appropriate policies and the 1998 Alagasco notice.

Travelers' properly advised Alagasco of its activities and requested proper information from Alagasco.

Travelers' investigation was proper. Travelers had the right to decide the manner and method by which to conduct its investigation.

Travelers properly and timely advised Alagasco that it was continuing its coverage review in conjunction with any potentially applicable policies while reserving its rights and would advise of its decision when completed.

Travelers' adhered to its procedures in its determination that defense would not be extended. The Travelers procedures were in accordance with industry standards and practices. As the Alabama Supreme Court had not ruled on whether or not a PRP notice form the USEPA was considered a suit; the decision not to extend defense was a fairly debatable issue. Travelers actions were reasonable and in accordance with industry standards and practices.

Based upon the documents reviewed, it is my opinion that Travelers demonstrated reasonable and prudent adjustment processes and practices in their handling and decision making concerning this matter. Travelers handled this matter without improper motive, fraud, malice, oppression or reckless disregard for Alagasco.


I reserve the opportunity to review additional documents, materials and information as they become available and to update my opinion based on that information.

Sincerely,

Kathleen J. Robison, CPCU
October 12, 2011

10

Exhibit A

# CURRICULUM VITAE

**Kathleen J. Robison, CPCU**
**229 Golanvyi Trail**
**Vonore, TN  37885**
**Phone: (423) 884-3226**
**        (423) 404-3538**
**Email: krobi@tds.net**
**        www.krobiconsult.com**

## EMPLOYMENT HISTORY

| | |
|---|---|
| Current | Malecki Deimling Nielander & Associates |
| | K.Robi & Associates, LLC |
| | Vonore, Tennessee |
| | Insurance Management Consultant |
| | |
| 1994-2004 | DaimlerChrysler Insurance Company |
| | Farmington Hills, Michigan |
| | Vice-President, Claims & Operations |
| | |
| 1991-1994 | Bankers and Shippers Insurance Company |
| | A Subsidiary of the Travelers |
| | Burlington, North Carolina |
| | Vice-President, Claims |
| | |
| 1987-1991 | Tri-State Insurance Company |
| | Member - W.R. Berkley Group |
| | Luverne, Minnesota |
| | Vice-President, Claims |
| | |
| 1979-1987 | Citizens Insurance Company |
| | Member - State Mutual Group |
| | Howell, Michigan |
| | Manager of Claims Branches |
| | Administration/Training Claims Manager |
| | Branch Claims Manager |
| | |
| 1978-1979 | Sentry Insurance Company |
| | Midland, Michigan |
| | Field Adjuster |
| | |
| 1976-1978 | Dairyland Insurance Company |

1

Subsidiary of Sentry Insurance Company
Chillicothe, Ohio
Claims Adjuster

1974-1976    INA
Columbus, Ohio
Claims Adjuster

1971-1972    State Automobile Mutual Insurance Company
Columbus, Ohio
Claims Adjuster

## EDUCATION AND PROFESSIONAL DEVELOPMENT

2007    Associate in Claims (AIC)
American Institute of Chartered Property & Casualty Underwriters

2002    National Leadership Institute (NLI)
Society of CPCU

1989    Associate in Risk Management (ARM)
American Institute of Chartered Property & Casualty Underwriters

1987    Associate in Underwriting (AU)
American Institute of Chartered Property & Casualty Underwriters

1985    Chartered Property Casualty Underwriter (CPCU)
American Institute of Chartered Property & Casualty Underwriters

1971    Bachelor of Arts
Western College
Oxford, Ohio
Political Science and History

Management Courses (1994 – Present)

University of Michigan, Ann Arbor, MI
Linking Customer Satisfaction, Quality and Financial Performance

Wharton Business School, University of Pennsylvania, Philadelphia, PA
Mergers & Acquisition Strategies
Strategic Thinking and Management for Competitive Advantage

Salve Regina University, Newport, RI
Organizational Theory & Behavior

Ethics for Managers
Law and Business Organizations
Research Methodology

Personnel Decisions International, Troy, MI
Personality and Leadership
Active Leadership
Coaching People to Top Performance

Excel Partnerships, Southfield, MI
ISO – 9001 Quality/Process Management

## PROFESSIONAL ORGANIZATIONS & ACTIVITIES

Society of CPCU
Board of Governors (2001-2004, 2008-2011)
National Regulatory and Legislative Section Committee (2005-2008)
Regulatory and Legislative Quarterly Editor (2006- 2007)
National Budget and Finance Committee (1999-2001)
National Claims Section Committee Chair (1997-1999)
Claims Quarterly Editor (1989-1997)

National Association of Independent Insurers
Chair Executive Claims Committee (2001-2003)
Vice-Chair Executive Claims Committee (1999-2001)

Arbitrations Forums
Board member (2003-2004)
Arbitrator (2006 – present)

Insurance Service Office
Claims Advisory Board (1998-2000)

National Insurance Crime Bureau
Board of Governors (1996-1999)
Audit Subcommittee Member

National Association of Insurance Women
National Claims Woman of the Year (1990)

SITE – Society of Insurance Trainers and Educators (2007 – present)

## PUBLICATIONS

"Getting to 'Yes': Attend the 2005 CPCU Society Annual Meeting and Seminars in Atlanta", written for the CPCU Society and published in the Section Newsletters, March – September, 2005

"Making Assessments, Reviews, Audits Work to Your Benefit", Claims Magazine, March 2006

"Mega-Catastrophes: Industry and Government Collaboration", Regulatory & Legislative Quarterly, December 2006

"Sections Strategic Task Force Report Summary", Regulatory & Legislative Quarterly, December 2006

"Education Nightmares? Don't let CE requirements keep you up at night", Claims Magazine, February, 2007

"Sections Strategic Implementation Task Force Report Summary", printed in the various CPCU Section Quarterly Newsletters from April to September of 2007

Enterprise-Wide Risk Management: Developing and Implementing, contributing author, American Institute for Chartered Property Casualty Underwriters/Insurance Institute of America, Malvern, PA, 2009

"Lessons in Licensing: Know the Rules or Risk Losing Big", Claims Magazine, March 2010

The MCS-90 Book, Second Edition , contributing author, IRMI, 2011


## EXPERT WITNESS FILES

Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp., No. 3-cv-02-0514 (M.D. Pa.)

Kenneth John Nardelli and Tammy M. Nardelli, husband and wife v. Metropolitan Group Property and Casualty Insurance Company, a Rhode Island corporation; Metropolitan Property and Casualty Insurance Company, a Rhode Island corporation; No. CV2004-01991; Superior Court of the State of Arizona

Arbor Properties Development, Inc., d/b/a Arbor Properties, et al. v. Westchester Surplus Lines Insurance Company, a foreign corporation, and Landmark American Insurance Company, a foreign corporation; No. 1:06 CV573LTS-RHW; United States District Court for the Southern District of Mississippi

4

Crown Auto Dealerships, Inc., v. Universal Underwriters Insurance Company; Case No.: 6:07-cv-595-Orl-28DAB; United States District Court, Middle District of Florida, Orlando Division

Allied Williams Companies, Inc. v. American Casualty Company, et al, Civil Action No. 1:07-CV-00230-KD-B; United States District Court for the Southern District of Alabama

David V. Oakes v. Allstate Insurance Company; Case No. 5:05 CV 174-R; United States District Court, Western District of Kentucky, Paducah Division

Michael Scheidecker, Cherie Thacker and Bonnie Scheidecker v. Allstate Insurance Company, Scott A. Millar and Karen M. Petersen; In The Superior Court for the State of Alaska; First Judicial District at Juneau; 1JU-06-1045CI

Stephen Nutter v. American Zurich Insurance Company; C. A. No. 08C-02-001 RFS; In the Superior Court of the State of Delaware in and for Sussex County

April Juliussen v. Allstate Insurance Company and Donald Cook; 3AN-07-11653 CI; In the Superior Court for the State of Alaska, Third Judicial District at Anchorage

Thompson v. Allstate Insurance Company, Circuit Court of Saint Mary's County, Maryland Case No. 18-C-06-001134 CN

Maria Nazario v. Nationwide Insurance Company, United States District Court for the Middle District of Pennsylvania, Civil Action No. 1:09-cv-00187

J.F. Day & Company, Inc. v. American Casualty Company of Reading, Pennsylvania, in the Circuit Court of Jefferson County, Alabama, Birmingham Division, Civil Action No. CV-2008-900840.00

McNeill Farms Condominium Association v. Bowers Insurance Services Agency, et al., in the Court of Common Please Franklin County, Ohio; Case No: 10-CV-03-4243

Tracy J. Lytle v. Jewel D. Wilson et al; in the Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio; Case No: CV08649320

Cecil C. Nevels III v. Deerbrook Insurance Company; in the Commonwealth of Kentucky, 28th Judicial Circuit, Pulaski Circuit Court, Division II; Case No. 09-CI-01811

Bobby and Amanda Messer, v. Morlan Enterprises, Inc., A West Virginia Corporation, et al., and Morlan Enterprises, Inc. A West Virginia Corporation v. Owners Insurance Company, A Foreign Corporation, in the Circuit Court of Wyoming

County, West Virginia; No. 06-C-182

Jannell Williams, as the Personal Representative of the Estate of Kenneth Williams vs. Werner Enterprises, LLC; Drivers Management, LLC; Mark Griffith, individually and as an agent for Crawford & Company; Crawford & Company; Freightliner Corporation, Inc.; Daimler Trucks North America, LLC; and Cheryl Rutledge, as the personal representative of the Estate of Quentin Rutledge; In the Circuit Court of Ohio County, West Virginia; Civil Action No. 09-C-419

Sarah Evens v. State Farm Fire and Casualty Company, William Fairfax and Insurance Unlimited; in the Superior Court of the District of Columbia Civil Division; Case No. 2010 CA 0006705

Cheryl Hensel v. Allstate Insurance Company, Allstate Indemnity Company, Gary Davis and Tina Watts; in the Superior Court for the State of Alaska Third Judicial District; Case No. 3An-02-7154 CI

Gary and Brenda Slaby and Home Owners Ins. Co. v. Archie Wilson; Court of Common Pleas Hamilton County, Ohio; Case No. A1009827

Alabama Gas Corporation v. Travelers Casualty and Surety Company, et.al., No. 2:10-cv-1840-IPJ; U.S. Dist. Ct. N.D. Ala.

# EXHIBIT B

## DOCUMENTS REVIEWED

**Alabama Gas Corporation v. Travelers Casualty and Surety Company, et.al., No. 2:10-cv-1840-IPJ; U.S. Dist. Ct. N.D. Ala.**

COMPLAINT against St Paul Fire & Marine Insurance Company, St Paul Mercury Insurance Company, St Paul Surplus Lines Insurance Company, Travelers Casualty and Surety Company including exhibits

NOTICE of Corporate Disclosure by Alabama Gas Corporation

Request for service by certified mail filed by Alabama Gas Corporation

NOTICE of Appearance by Fred R DeLeon, Jr on behalf of Alabama Gas Corporation

Summons Issued as to dfts St Paul Fire & Marine Insurance Company, St Paul Mercury Insurance Company, St Paul Surplus Lines Insurance Company, Travelers Casualty and Surety Company; mailed certified mail

Consent MOTION for Extension of Time to File Response/Reply *Consent Motion for Enlargement of Time to File Responsive Pleading* by St Paul Fire & Marine Insurance Company, St Paul Mercury Insurance Company, St Paul

Surplus Lines Insurance Company, Travelers Casualty and Surety Company.

ORDER granting Motion for enlargement of time to file responsive pleading;

MOTION for Leave to Appear Pro Hac Vice *W Scott Laseter* by Alabama Gas Corp

ORDER granting Motion for leave for W. Scott Laseter to appear pro hac vice

MOTION for Extension of Time by St Paul Fire & Marine Insurance Company, St Paul Mercury Insurance Company, Travelers Casualty and Surety Company

Corporate Disclosure Statement by St Paul Fire & Marine Insurance Company, St Paul Mercury Insurance Company, St Paul Surplus Lines Insurance Company, Travelers Casualty and Surety Company

1

*Defendants'* ANSWER to Complaint by St Paul Fire & Marine Insurance Company, St Paul Mercury Insurance Company, St Paul Surplus Lines Insurance Company, Travelers Casualty and Surety Company

ORDER finding as moot Motion for extension of time to file responsive pleading

ORDER SETTING TRIAL Pretrial Conference and Jury Trial

MOTION to Bifurcate *Duty to Defend from Bad Faith and Duty to Indemnify Issues,* MOTION to Expedite *Consideration of Duty to Defend,* MOTION to Stay *All Proceedings on Bad Faith and Duty to Indemnify* by Alabama Gas Corp

Brief re MOTION to Bifurcate *Duty to Defend from Bad Faith and Duty to*

*Indemnify Issues* MOTION to Expedite *Consideration of Duty to Defend* MOTION to Stay *All Proceedings on Bad Faith and Duty to Indemnify*

ORDER re MOTION to Bifurcate *Duty to Defend from Bad Faith and Duty to Indemnify Issues* MOTION to Expedite *Consideration of Duty to Defend* MOTION to Stay *All Proceedings on Bad Faith and Duty to Indemnify* filed by Alabama Gas Corp

*First Amended* ANSWER to Complaint with Jury Demand by St Paul, et. al.

Opposition to re  *Defendants' Opposition to Plaintiff Alagasco's Motion to Bifurcate Duty to Defend from Bad Faith and Duty to Indemnify Issues, To Expedite Consideration of Duty to Defend, and to Stay All Proceedings on Bad Faith and Duty to Indemnify* filed by St Paul et. al.

MOTION to Seal *Defendants' Motion to File Under Seal* by St Paul Fire et. al.

MOTION for Summary Judgment *on the Duty to Defend* by Alabama Gas Corp

Brief re MOTION for Summary Judgment *on the Duty to Defend with Evidentiary Materials*

ORDER granting Motion to file under seal

ORDER re MOTION to Bifurcate *Duty to Defend from Bad Faith and Duty to Indemnify Issues*

MOTION to Expedite *Consideration of Duty to Defend*

MOTION to Stay *All Proceedings on Bad Faith and Duty to Indemnify* filed by Alabama Gas Corp

SUBMISSION ORDER re  MOTION for Summary Judgment *on the Duty to Defend* filed by Alabama Gas Corp

REPLY to Response to Motion re MOTION to Bifurcate *Duty to Defend from Bad Faith and Duty to Indemnify Issues* MOTION to Expedite *Consideration of Duty to Defend* MOTION to Stay *All Proceedings on Bad Faith and Duty to Indemnify* filed by Alabama Gas Corporation

MOTION for Reconsideration re Order on Motion to Seal by Alabama Gas Corp

MOTION for Leave to File Excess Pages *Motion For Court To Accept Summary Judgment Initial Brief* by Alabama Gas Corp

MOTION for summary judgment by dfts

BRIEF in support of motion for summary judgment filed by dfts

Evidentiary submission in support of motion for summary judgment filed by dfts

ORDER re MOTION for reconsideration in opposition to dfts' motion to file under seal

ORDER granting 28 Motion for court to accept summary judgment initial brief

ORDER that parties shall adhere to the deadlines previously set forth in the court's Submission Order of *9128110*

RESPONSE to MOTION for Reconsideration re Order on Motion to Seal filed by St Paul et. al.

ORDER having considered Alabama Gas motion for reconsideration and dfts

MOTION for Reconsideration filed by Alabama Gas Corp

MOTION for Leave to Appear Pro Hac Vice Admission of Frank Winston by St Paul etc.

ORDER granting 37 Motion for pro hac vice admission of Frank Winston, Jr.

RESPONSE in Opposition re MOTION filed by Alabama Gas Corp

Cross MOTION for Summary Judgment *on the Duty to Defend* by St Paul et. al.

Cross MOTION for Summary Judgment *on  the Duty to Defend* by St Paul et. al.

Brief re Cross MOTION for Summary Judgment *on the Duty to Defend* filed by St Paul et. al.

AFFIDAVIT in Opposition re MOTION for Summary Judgment *on the Duty to Defend* filed by St Paul et. al.

RESPONSE in Opposition re MOTION; *AMENDED RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT* filed by Alabama Gas Corporation

Joint *MOTION for Submission Order* by Alabama Gas Corporation, St Paul et. al.

3

REPORT of Rule 26(f) Planning Meeting

ORDER granting Motion for submission order

ORDER that discovery in this case is stayed until the pending motions have been fully briefed by the parties and the court has ruled on them

REPLY Brief filed by Defendants St Paul et. al. re:  MOTION filed by St Paul et. al.

RESPONSE to re *Travelers' Cross Motion for Summary Judgment and to Travelers' Opposition to Alagasco's Motion for Partial Summary Judgment on the Duty to Defend* filed by Alabama Gas Corporation

REPLY to re *Defendant's Reply Brief in Support of Cross Motion for Summary Judgment on the Duty to Defend and in Opposition to Plaintiffs Motion for Partial Summary Judgment on the Duty to Defend* filed by St Paul *et. al.*

MEMORANDUM OPINION

ORDER in accordance with memorandum opinion

ORDER finding as moot motion to bifurcate duty to defend from bad faith and duty to indemnify issues, to expedite consideration of duty to defend, and to stay all proceedings on bad faith and duty to indemnify

MOTION for Reconsideration re Memorandum Opinion *AND/OR FOR*

*CLARIFICATION by* St Paul et. al.

Brief re MOTION for Reconsideration re Memorandum Opinion *AND/OR FOR CLARIFICATION* MOTION for Reconsideration re Memorandum Opinion *AND/OR FOR CLARIFICATION* filed by St Paul et. al.

ORDER re dfts' MOTION for partial reconsideration and/or clarification of the court's December 7,2010 memorandum opinion

MOTION for Partial Summary Judgment *on Bad Faith* by Alabama Gas Corporation

Brief re MOTION for Partial Summary Judgment *on Bad Faith with exhibits*

SUBMISSION ORDER re MOTION for Partial Summary Judgment *on Bad Faith* filed by Alabama Gas Corporation

4

RESPONSE in Opposition re MOTION for Reconsideration Memorandum *Opinion AND/OR FOR CLARIFICATIONMOTION* for Reconsideration re Memorandum Opinion *AND/OR FOR CLARIFICATION* filed by Alabama Gas Corp - Attachments

RESPONSE in Opposition re MOTION for Partial Summary Judgment *on Bad Faith* filed by St Paul et. al.

MOTION for Leave to File *Reply Brief in Support of Motion for Reconsideration and/or Clarification of the Court's December* 7, *2010 Memorandum Order* by St Paul et. al. - Attachments

REPLY Brief filed by Plaintiff Alabama Gas Corp re: Response in Opposition to *Motion, for Partial Summary Judgment on Bad Faith* filed by Alabama Gas Corp - Attachments

ORDER granting Motion for leave to file reply brief in support of motion for partial reconsideration and/or clarification of the court's December 7,2010, Memorandum Opinion

REPLY Brief filed by Defendants St Paul et. al. re: Order on Motion for Leave to File, filed by St Paul et. al.

MEMORANDUM OPINION AND ORDER granting in part and denying in part Motion for reconsideration and/or clarification regarding the court's December 7,2010 memorandum opinion

ORDER denying Alabama Gas Corp motion for partial summary judgment

REPORT of Rule 26(f) Planning Meeting

SCHEDULING ORDER

MOTION for Protective Order by St Paul et. al - Attachments

ORDER re MOTION for Protective Order filed by dfts

MOTION for Leave to Appear Pro Hac Vice *Ruth* S. *Kochenderfer*

RESPONSE in Opposition re MOTION for Protective Order filed by Alabama Gas Corp - Attachments

ORDER granting Motion for Leave to Appear pro hac vice for arty Ruth S Kochenderfer

MOTION for Leave to File *Reply Memorandum in Support of Motion for Entry of Protective Order* by St Paul et. al. - Attachments

ORDER granting Motion for leave to file reply brief in support of motion for entry of protective order

REPLY Brief filed by Defendants St Paul et. al.  re: Order on Motion for Leave to File *Reply Brief in Support of Motion for Entry of Protective Order* filed by St Paul et. al.

ORDER that Alabama Gas Corp shall furnish Court with a proposed alternative protective order setting forth its position as to which documents it agrees shall be protected

First MOTION for Protective Order *Proposed Protective Order* by Alabama Gas Corp

NOTICE by St Paul et. al. re Reply Brief, *Notice of Filing Exhibit A to Reply Brief in Support of Motion for Entry of Protective Order*

ORDER that court finds the proposed order submitted by Alabama Gas Corp is appropriate and serves purpose of protecting documents considered confidential in this litigation, court shall issue a protective order separately

PROTECTIVE ORDER GOVERNING DISCOVERY MATIERAL

MOTION for Leave to Appear Pro Hac Vice *Admission of Paul Janaskie* by Travelers - Attachments

ORDER granting Motion for pro hac vice admission of Paul Janaskie

*Second Amended* ANSWER to Complaint with JURY DEMAND by St Paul et. al.

MOTION to Compel *a More Complete Response to Interrogatory* 8 *and to Compel In Camera Inspection and Production of Documents Identified by Travelers as Privileged or Protected* by Alabama Gas Corporation

Brief re MOTION to Compel *a More Complete Response to Interrogatory 8 and to Compel In Camera Inspection and Production of Documents Identified by Travelers as Privileged or Protected.* - Attachments

ORDER re MOTION to Compel *a More Complete Response to Interrogatory* 8 *and to Compel In Camera Inspection and Production of Documents Identified by Travelers as Privileged or Protected* filed by Alabama Gas Corp

MOTION for Extension of Time to File Response/Reply as to Brief, by St Paul et. al.

ORDER granting Motion for extension of time in which to respond to Alabama Gas Corp motion to compel

T000001 - 001108; T001261 - 001342; T003535-008152; T008354-008360;  ALA005051 - 005057; T008361-008525

Munich Re Book,

6

Gail Dalton Deposition with exhibits (08-25-11)

Robert J. Harris Deposition with exhibits (08-24-11)

Peter Hilderbrand Expert Report

Nicole Tarczanin Deposition with exhibits (10-06-11)

**EXHIBIT C**

**EXPERT WITNESS TESTIMONY CASE LIST BY TRIAL OR BY DEPOSITION**

*Depositions*

Kenneth John Nardelli and Tammy M. Nardelli, husband and wife v. Metropolitan Group Property and Casualty Insurance Company, a Rhode Island corporation; Metropolitan Property and Casualty Insurance Company, a Rhode Island corporation; No. CV2004-01991; Superior Court of the State of Arizona

David V. Oakes v. Allstate Insurance Company; Case No. 5:05 CV 174-R; United States District Court, Western District of Kentucky, Paducah Division

Michael Scheidecker, Cherie Thacker and Bonnie Scheidecker v. Allstate Insurance Company, Scott A. Millar and Karen M. Petersen; In The Superior Court for the State of Alaska; First Judicial District at Juneau; 1JU-06-1045CI

Cecil C. Nevels III v. Deerbrook Insurance Company; in the Commonwealth of Kentucky, 28th Judicial Circuit, Pulaski Circuit Court, Division II; Case No. 09-CI-01811

Jannell Williams, as the Personal Representative of the Estate of Kenneth Williams vs. Werner Enterprises, LLC; Drivers Management, LLC; Mark Griffith, individually and as an agent for Crawford & Company; Crawford & Company; Freightliner Corporation, Inc.; Daimler Trucks North America, LLC; and Cheryl Rutledge, as the personal representative of the Estate of Quentin Rutledge; In the Circuit Court of Ohio County, West Virginia; Civil Action No. 09-C-419

*Trial*

Kenneth John Nardelli and Tammy M. Nardelli, husband and wife v. Metropolitan Group Property and Casualty Insurance Company, a Rhode Island corporation; Metropolitan Property and Casualty Insurance Company, a Rhode Island corporation; No. CV2004-01991; Superior Court of the State of Arizona