IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Alabama Gas Corporation,                  )  | |
|                    Plaintiff,     )  | |
| v.                                        )  | CIVIL ACTION NO.: |
|                                           )  | 2:10-cv-1840-IPJ |
| Travelers Casualty and Surety             )  | |
| Company, *et al.*,                        )  | |
|                   Defendants.    )  | |
|                                           )  | |

## ALAGASCO'S BRIEF IN SUPPORT OF RENEWED MOTION FOR PARTIAL <u>SUMMARY JUDGMENT ON BAD FAITH</u>

Plaintiff Alabama Gas Corporation ("Alagasco") respectfully renews its motion for partial summary judgment regarding bad faith because deposition testimony of Travelers'[1] claims handlers has revealed they knew or certainly should have known their refusal to defend Alagasco based on the assertion that a "PRP letter" from the United States Environmental Protection Agency ("EPA") was not a "suit" had no support under Alabama law. More particularly, before refusing to defend, Travelers' claims handlers reviewed Environmental Coverage Case Law, 20th Edition, 2009, which shows in clear summary fashion that, while

---

[1] All the defendants are part of The Travelers Companies, Inc. group of insurers and, therefore, will be referred to collectively as "Travelers."

no Alabama case had addressed the issue, the overwhelming majority of jurisdictions had clearly rejected the position adopted by Travelers.

Had Travelers followed its own procedures by seeking legal counsel before it was too late to change course, it would have learned that insurers commit bad faith under Alabama law if they rely "on an ambiguous portion of a policy as a lawful basis" for refusing to defend.  *Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23, 32 (Ala. 2008).  Travelers would have also learned that the Alabama Supreme Court has indicated that, when considering environmental coverage questions not previously addressed by Alabama cases, it would look to the "clear majority of courts that have answered the questions . . . [and] adopt the majority position . . . ." *Alabama Plating Co. v. U.S. Fid. & Guar. Co.*, 690 So. 2d 331, 336 (Ala. 1996). Especially since the duty to defend is broader than the duty to indemnify and insurers are obligated to resolve doubts in favor of finding coverage, Travelers' refusal to defend Alagasco was in bad faith as a matter of law.  *See, e.g., Blackburn v. Fid. & Deposit Co.*, 667 So. 2d 661, 669 (Ala. 1995) (ambiguities in the language of an insurance policy are construed in favor of the insured); *U.S. Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985) (the insurer's duty to defend is more extensive than its duty to pay).

Alagasco is mindful that the Court denied its earlier motion for partial summary judgment on bad faith (Doc. 57), finding that questions of fact remain.

(Order, Feb. 2, 2011 (Doc. 67).)  As explained below, Alagasco respectfully suggests that the facts revealed through discovery have resolved all doubt with regard to whether Travelers' conduct satisfies all the elements for insurer bad faith.

## I.   STATEMENTS OF FACT NOT IN DISPUTE

1. Defendant St. Paul Fire and Marine Insurance Company issued to Alagasco insurance policy 501JB1000 with a policy period from July 10, 1967 to July 10, 1983.  St. Paul Policy 501JB1000 (attached as **Exhibit A**), identified as Ex. 33 to the Dep. of Robert Harris, Aug. 24, 2011.  (Mem. Op. 4, Dec. 7, 2010 (Doc. 51) and Mem. Op. and Order 23, Feb. 2, 2011 (Doc. 66).)

2. On June 25, 2009, Alagasco informed Travelers that, on the prior day, it had received a formal Notice of Potential Liability and Offer to Negotiate from EPA (the "Liability Notice and Offer to Negotiate" or "PRP Letter") and draft Administrative Order on Consent (the "Draft AOC").  In that June 25 letter, Alagasco reiterated the demand it had previously made for a defense.  Letter from W. Scott Laseter, counsel for Alagasco, to Nicole S. Tarczanin, Assistant Account Executive, Travelers (June 25, 2009) (attached as **Exhibit B**; previously attached as Ex. L to Alagasco's Complaint (Doc. 1-13)).

3. On June 26, 2009, Travelers wrote to Alagasco as follows:

> As I advised you in our telephone conversation, and as Ms. Tarczanin advised you in her letter dated June 24, 2009 (a copy of which is enclosed for your convenience, as it appears our

> letters may have crossed in the mail), we are currently in the process of reviewing the file for this matter, in conjunction with any potentially applicable policies issued to Alagasco or any other entity under which Alagasco may qualified [sic] as an insured. Once we have had an opportunity to complete our review, we will be in further contact regarding our coverage position. At this time, I can only continue to advise that Alagasco act in a manner that it believes will best [sic] its interests with regard to the captioned matter.

Letter from Gail P. Dalton, Senior Account Executive, Travelers, to W. Scott Laseter (June 26, 2009) (attached as **Exhibit C**; previously identified as Exhibit O to Alagasco's Complaint (Doc. 1-16)).

    4.    Travelers did not communicate at all with Alagasco between June 26, 2009 and February 3, 2010, at which time Travelers wrote that it did not believe any of the claims asserted by EPA against Alagasco constituted a "suit" such that it did not believe it had "any potential defense obligations at this time." Letter from Gail P. Dalton to W. Scott Laseter (Feb. 3, 2010) (attached as **Exhibit D**; also identified as Ex. 3 to Dep. of Gail Dalton, Aug. 25, 2011, attached as **Exhibit E**).

    5.    Travelers' claims department uses the reference book "Environmental Coverage Case Law, 20th Edition, 2009," published by the reinsurer Munich Re America (the "*Munich Re Book*"), a copy of which is in the record as (Doc. 106-3) (also attached as **Exhibit F**). Dalton Dep. 26:4-22 (**Exhibit E**). *See* E-mail from Ruth Kochenderfer, counsel for Travelers, to Laseter (Sept. 7, 2011, 1:15 p.m. EDT) (attached as **Exhibit G**), confirming correct edition of same.

6.Gail Dalton, Travelers' claims handler, examined the *Munich Re Book* section regarding whether a PRP letter is a suit prior to sending the February 3, 2010 letter (**Exhibit D** hereto) in which she definitively asserted Travelers had no duty to defend Alagasco.  Letter from Dalton to Laseter (Feb. 3, 2010) (**Exhibit D** hereto) *supra* ¶4 at 1.

7.More than a year passed from the time of Alagasco's initial demand for a defense before Travelers' claims handlers sought any advice from counsel. Dalton Dep. 25:12-26:3 (**Exhibit E** hereto).

8.More than 8 months passed from the time Alagasco forwarded the PRP Letter and renewed its demand for a defense before Travelers' claims handlers sought any advice from counsel in connection with Alagasco's claim.  *Id.*

9.Travelers did not secure an independent legal opinion prior to refusing to defend.  *Id*.

10.On October 29, 2009, Alagasco executed the AOC with HHA and EPA.  Administrative Settlement Agreement and Order on Consent for Removal Action (attached as **Exhibit K**) (identified as Ex. 10 to Deposition of Steven Chapman, Oct. 12, 2011).

11.There is no written record of what, if any, legal advice Travelers secured prior to refusing to defend.  Dep. of Kathleen Robison 106:15-108:5, Nov. 2, 2011 (attached as **Exhibit H**).

## II.   ARGUMENT AND CITATION OF LAW

### A.   Standard of Review

The Court should grant summary judgment when the Court finds that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is not genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" or "not significantly probative."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the non-moving party's case.  *Id*. at 248.

### B.   Bad Faith under Alabama Law

The Alabama Supreme Court summarized the law surrounding bad faith breach of insurance policies in *Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23 (Ala. 2008).  In that case, the court reiterated earlier decisions in which it explained that an insurance company might be liable for either "normal" or "abnormal" bad faith failure to pay amounts owed under an insurance policy:

> In the "normal" bad-faith case, the plaintiff must show the absence of any reasonably legitimate or arguable reason for denial of a claim. . . . In the "abnormal" case, bad faith can consist of:  1) intentional or reckless failure to investigate a claim, 2) intentional or reckless failure to properly subject a claim to a cognitive evaluation or review, 3) the manufacture of a debatable reason to deny a claim, or 4) ***reliance on an ambiguous portion of a policy as a lawful basis for denying a claim.***

*Jones*, 1 So. 3d at 32 (citation omitted) (emphasis added) (*quoting Singleton v. State Farm Fire & Cas. Co.*, 928 So. 2d 280, 283 (Ala. 2005) (*in turn quoting State Farm Fire & Cas. Co. v. Slade,* 747 So. 2d 293, 306-7 (Ala. 1999))). *See also Mut. Serv. Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1314-16 (11th Cir. 2004) (also explaining "normal" and "abnormal" bad faith under Alabama law).

The Court in *Employees' Benefit Association v. Grissett*, 732 So. 2d 968 (Ala. 1998), detailed the elements for showing bad faith as follows:

> (a) an insurance contract between the parties and a breach thereof by the defendant;
>
> (b) an intentional refusal to pay the insured's claim;
>
> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
>
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason; and
>
> (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

732 So. 2d at 976 (*quoting, in part*, *Nat'l Sec. Fire & Cas. Co. v. Bowen,* 417 So. 2d 179 (Ala. 1982)). The court further explained that "[r]equirements (a) through (d) represent the 'normal' case, [while requirement] (e) represents the 'abnormal' case." *Id. See also Nat'l Ins. Ass'n v. Sockwell*, 829 So. 2d 111, 127 (Ala. 2002) (discussing the evolution of the tort of insurer bad faith).

**C.      Travelers' Knew It Lacked a Debatable Reason for Refusing to Defend**

In response to Alagasco's Motion for Partial Summary Judgment on Bad Faith (Doc. 57), the Court found a genuine issue of material fact still existed precluding summary judgment in favor of Alagasco. (Order, Feb. 2, 2011 (Doc. 67).) Alagasco submits that elements "a," "b," and "c" from *Grissett* were established by the Court's grant of summary judgment in favor of Alagasco on the duty to defend. (Mem. Op., Dec. 7, 2010 (Doc. 51); *see also* Order, Feb. 2, 2011 (Doc. 66, ruling on Travelers' Motion for Reconsideration).) To the extent the Court was not yet convinced that element "c" was satisfied (i.e., whether or not Travelers had a reasonably legitimate or arguable reason for thinking the Alabama Supreme Court would follow the minority approach holding PRP letters are not suits), Alagasco would note that late last year in *Ameron v. Insurance Company of State of Pennsylvania*, 242 P.3d 1020 (Cal. 2010), even the California Supreme Court qualified the minority view originally announced in *Foster-Garner, Inc. v. National Union Fire Ins. Co.,* 959 P.2d 265 (Cal. 1998), by holding the definition of "suit" includes adjudicative administrative proceedings.[2]  The California

---

[2]  Although *Ameron* was decided late last year, it was still before Travelers wrote any of the several briefs it has filed in this matter citing *Foster-Gardner* without qualification. *See, e.g., Defs.' Reply Br. in Supp. of Cross Mot. for Summ. J. on the Duty to Defend and in Opp'n to Pl.'s Mot. for Partial Summ. J. on the Duty to Defend* (Doc. 50, filed Nov. 22, 2010); and *Defs' Opp'n to Alagasco's Mot. for Partial Summ. J. on Bad Faith* (Doc. 61, filed Jan. 26, 2011).

Supreme Court's tilt was crisply summed up in a concurring opinion by Justice Kennard:

> When it was decided in 1998, *Foster-Gardner* represented a distinctly minority view.  (See *Governmental Interinsurance Exchange v. City of Angola (N.D. Ind. 1998) 8 F. Supp. 2d 1120, 1130* [" 'The vast majority of courts around the United States ... have found that all kinds of coercive administrative actions ... are "suits" covered by general liability insurance policies ... .' "].)  Since *Foster-Gardner* was decided, no sister state court has adopted its "literal meaning approach," or its resulting "bright-line rule," in construing the term "suit" in a CGL insurance policy, while courts in nine sister states and federal courts applying the law of two other sister states have rejected that approach, instead adopting either the "functional equivalent" approach or the "hybrid" approach that the *Foster-Gardner* majority rejected. . . . Thus, over the past 12 years, it has become increasingly apparent that *Foster-Gardner* lies far outside the mainstream of American insurance law.
>
> Here, the court limits *Foster-Gardner*'s "bright-line rule" by holding that it does not apply to administrative agency adjudicative proceedings.  The court reaches this result by concluding that the word "suit," when used in a CGL policy that does not define that word, is sufficiently ambiguous that it should be construed to protect the insured's reasonable expectation of coverage.  (See maj. opn., *ante*, at p. 1386.)  In so doing, the court implicitly rejects *Foster*-Gardner's reasoning that "suit" unambiguously refers only to court proceedings.  (*Foster-Gardner, supra, 18 Cal.4th at pp. 878-879*.)  Although I would prefer that *Foster-Gardner* be overruled, the decision here is at least a step in the right direction.

*Ameron*, 242 P.3d at 1031 (citations omitted).

In light of the teachings of *Alabama Plating*, there is simply no way an insurer could reasonably believe that the Alabama Supreme Court would follow

9

what was, in its finest moment, a "distinctly minority view," and what had been marginalized to a place "far outside the mainstream of American insurance law" by the time Travelers denied a defense to Alagasco. *Ameron*, 242 P.3d at 1031.

Therefore, Alagasco respectfully suggests that element "d" from *Grissett* should be the only remaining fact question left to determine whether Travelers is liable for "normal" bad faith. In other words, the question is whether Travelers knew asserting that a PRP letter from the EPA did not constitute a "suit" was not fairly debatable under Alabama law. *See Grissett*, 732 So. 2d at 976.

Alagasco has already brought to the Court's attention reported cases in which Travelers appeared to be on the losing side on this issue. *See Aetna Cas. & Sur. Co. v. Kentucky*, 179 S.W.3d 830, 837 (Ky. 2005) (finding that an insured's receipt of a PRP letter from the EPA "seeking remediation or remediation costs is a 'suit' which . . . [the] insurer has a duty to defend") and *Aetna Cas. & Sur. Co. v. Pintlar Corp.*, 948 F.2d 1507, 1517 (9th Cir. 1991) ("[c]overage should not depend on whether the EPA may choose to proceed with its administrative remedies or go directly to litigation").[3] During discovery, Alagasco took the deposition of Gail Dalton, Travelers' principal claims handler for the Alagasco matter. Ms. Dalton testified that, before she wrote the February 3, 2010, letter expressly refusing to

---

[3] Through a name change, Travelers Casualty and Surety Company is the company formerly known as Aetna Casualty & Surety Company and is, of course, a defendant in this lawsuit. Defs.' Answer (Doc. 12) ¶6.

defend Alagasco based on the theory that a PRP letter was not a suit (**Exhibit D** hereto), she consulted the *Munich Re Book*. Dalton Dep. 26:4-22 (**Exhibit E** hereto). The *Munich Re Book* surveys the law on a variety of coverage issues, including, as the very first issue addressed therein, whether administrative actions like PRP letters are "suits" triggering the duty to defend. Dep. of Nicole Tarczanin 19:24-20:6, Oct. 6, 2011 (attached as **Exhibit I**); *see also Munich Re Book* (**Exhibit F** hereto) at 3.

At pages 4 through 10, the *Munich Re Book* lists over 40 cases from various jurisdictions across the country and confirms that the majority rule (i.e., holding that a PRP letter or other agency action is a "suit") enjoys better than a two-to-one advantage. *Id.* Further, underscoring the same point Justice Kennard made in his concurring opinion in *Ameron*, the most recent of the decisions identified in the *Munich Re Book* that might arguably provide any support for the position advanced by Travelers was a case from the federal district court in Vermont handed down in 1999, wherein the district court was "not persuaded that the Vermont supreme court would construe 'suit' as used in the typical comprehensive general liability policy to encompass ***private party*** demand letters." *Northern Sec. Ins. Co. v. Mitec Telecom, Inc.*, 38 F. Supp. 2d 345, 349 (D. Vt. 1999) (emphasis added). Whether even *Mitec* provides any support for Travelers' position is questionable, however, because the district court distinguished between, on the one hand, a mere demand

11

letter from a private party and, on the other hand, an announcement by an environmental agency that it intends to exercise its enforcement powers against the insured.  *Id.*  Perhaps more importantly, the *Munich Re Book* also shows that just two years later, the Vermont Supreme Court rejected *Mitec*, making it clear that Vermont had also joined the growing majority.  *Vermont v. CNA Ins. Cos.*, 779 A.2d 662 (Vt. 2001).  In addition to *Vermont v. CNA*, the *Munich Re Book* itself shows cases decided after *Foster-Gardner* in at least four other jurisdictions that clearly went against Travelers' position.

The fact that Ms. Dalton actually reviewed the *Munich Re Book* prior to sending the February 3, 2010 letter answers the question about whether Travelers knew its position was far outside the mainstream of American insurance law at the time it refused to defend Alagasco.  Although perhaps ultimately mattering more to the measure of punitive damages, it seems worth noting that Travelers did not consult the *Munich Re Book* or seek any other legal advice when it first took the position some fourteen months earlier that it did not have to defend Alagasco in response to the EPA's Information Request under CERCLA section 104(e).  *Dep. of Nicole Tarczanin* 17:10-19:23 (**Exhibit I** hereto).  Further, Travelers did not consult the *Munich Re Book* or seek any other legal advice at the time Alagasco tendered the PRP Letter and renewed its demand for a defense, despite the clear indication that EPA had given Alagasco only 14 days to respond.  Letter from W.

Scott Laseter to Nicole S. Tarczanin (June 25, 2009) (**Exhibit B** hereto); *see also* Dalton Dep. 25:12-26:3 (**Exhibit E** hereto).  Rather, Travelers' claims handlers first sought legal advice in early 2010, months after Alagasco had already settled with EPA, thereby assuring it would be too late for the advice to make any difference in how the underlying claim would be defended.

This failure to seek legal advice prior to refusing a defense is contrary even to Travelers' own policies.[4]  As Robert Harris, Travelers' Second Vice President, testified when explaining what sort of review decisions by first-line claims handlers are subjected to:

> It's then formally reviewed by a file handler's supervisor.  In the event that – if Ms. Tarczarin [sic] made such a determination, Ms. Dalton would review it.  She may also have Mr. Connaughton formally review it.  Whether only Ms. Dalton refers it or whether she and Mr. Connaughton formally review it, it would next come to me for review.  Then after I review it it will be sent out for legal review.

Dep. of Robert Harris 32:16-22, Aug. 24, 2011 (attached as **Exhibit J**).  In situations where Travelers is called upon to consider defense obligations arising outside the context of a lawsuit filed in court, Mr. Harris testified:

> Our general procedure is that, as I previously explained, when a policy holder requests us to defend a matter that is not a suit, then our file handlers and supervisors will consult with counsel

---

[4]  Travelers may argue that it did not expressly refuse to defend until February 2010, but it is well established that the protracted failure to take a coverage position constitutes a constructive denial.  *See, e.g.*, *Blackburn*, 667 So. 2d at 668.

>       to determine whether there is any legal authority that would require us to treat this non-litigation matter as a suit, and this is assuming that the policy language we're looking at has a defense clause that requires a suit in order to trigger defense coverage.
>
>       If there – and then if there is not – if the law does not require us to treat it that way, then it's not a suit, and so we do not do a defense analysis.

*Id.* at 37:25-38:9.

Of course, had Travelers' claims handlers looked at the *Munich Re Book* or sought legal advice back in November 2008 with regard to whether Requests for Information from environmental agencies trigger a duty to defend, they would have not only found that they are understood to be formal claims but also that at least some courts have held that even Requests for Information constitute "suits" triggering the duty to defend. *See Munich Re Book* (**Exhibit F**) at 10 (*citing SCSC Corp. v. Allied Mut. Ins. Co.,* 536 N.W.2d 305 (Minn. 1995)). Likewise, had they looked at the *Munich Re Book* or sought legal advice when Alagasco forwarded the PRP Letter to them in June 2009, they would have learned that the view that a PRP letter is not a suit was contrary to the mainstream of decisions. Indeed, had they looked closely at the *Munich Re Book*, they would have found the *Alabama Plating* decision on three different pages: page 50 (Bates numbered KGL001909), page 103 (Bates numbered KGL001962), and page 118 (Bates numbered KGL001977). *See Munich Re Book* (**Exhibit F**) at 52, 105, and 120. Alagasco acknowledges that

one would actually have to read the *Alabama Plating* decision in order to see that the Alabama Supreme Court had already indicated that, when considering environmental coverage questions not previously addressed by Alabama cases, it would look to the "clear majority of courts that have answered the questions . . . [and] adopt the majority position . . . ." 690 So. 2d at 336. The point, however, is that the Alabama Supreme Court's teachings were certainly not hidden from the view of persons dealing with environmental coverage questions for a living. This failure to follow its own internal procedures is further uncontroverted evidence of Travelers' bad faith.

Finally, it seems worth pointing out that Travelers has itself lost on the argument of whether the term "suit" is ambiguous. *See, e.g.*, *Aetna v. Kentucky*, 179 S.W.3d at 837; *Pintlar*, 948 F.2d at 1517. Alabama law is clear that an "insurer cannot use ambiguity in the contract as a basis for claiming a debatable reason not to pay the claim." *Grissett*, 732 So. 2d at 976. *See also Jones*, 1 So. 3d at 32 (indicating that bad faith in the abnormal case can consist of reliance on an ambiguous portion of a policy as a lawful basis for denying a claim). The reason for this is simple. Under Alabama law (and the law of virtually every other jurisdiction), ambiguous terms must be construed in favor of finding coverage. *E.g., Blackburn*, 667 So. 2d at 669 (stating that ambiguities in the language of an insurance policy are construed in favor or the insured, rather than the insurer).

Thus, in situations where it is unclear from the terms of the policy or the facts at hand, the insurer owes a defense. Imposing liability for bad faith when an insurer refuses to defend by relying on an ambiguous term is not unfair because, instead of denying coverage outright, the carrier has the well-established option of entering a defense under a reservation of rights and then seeking declaratory relief. *See, e.g., New Appleman on Insurance Law Library Edition*, § 16.03; *L&S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 521 So. 2d 1298, 1303 (Ala. 1987) (pointing out that when faced with defending under a reservation of rights, insurers have other alternatives such as suing for a declaratory judgment before they undertake the defense to determine their liability). Therefore, courts hold that an insurer refusing to defend outright does so at its own peril. *E.g.*, *Peterson Sand & Gravel, Inc. v. Maryland Cas. Co.*, 881 F. Supp. 309, 313 (N.D. Ill. 1995). Having had more than one court rule against it on whether the term "suit" is ambiguous, Travelers should not be heard to say it was unaware that the term "suit" is capable of more than one reasonable interpretation.

### III.   CONCLUSION

Travelers' knew or certainly should have known its assertion that EPA's PRP Letter was not a "suit" triggering the duty to defend was not fairly debatable. Therefore, the Court should enter partial summary judgment finding that Travelers acted in bad faith as a matter of law.

## **CERTIFICATE AS TO TYPE AND SIZE**

The undersigned hereby certifies that the foregoing document has been prepared with 14-point type as required by the Court in its Administrative Procedures for Filing, Signing, and Verifying Pleadings and Documents at Section II(A)(1).

Respectfully submitted this 14th day of November, 2011.

/s/ FRED R. DELEON, JR.
REBECCA W. PRITCHETT
Alabama Bar No. ASB-5146-T83R
rebecca@pritchettlawfirm.com
FRED R. DELEON, JR.
Alabama Bar No. ASB-0761-R80D
fdeleon@pritchettlawfirm.com
Pritchett Environmental & Property Law LLC
3205 Lorna Rd., Ste. 101
Birmingham, Alabama  35216
Tel:  (205) 824-9092
Fax: (205) 824-8092

W. SCOTT LASETER
Georgia Bar No. 438515
Kazmarek Geiger & Laseter LLP
3490 Piedmont Road, NE
Suite 350
Atlanta, Georgia  30305
Tel:  (404) 812-0839
Fax: (404) 812-0845
slaseter@kglattorneys.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I have this 14th day of November, 2011, electronically filed the foregoing *Alagasco's Brief in Support of Renewed Motion for Partial Summary Judgment on Bad Faith* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record, among others:

>Andrew J. Sinor, Esq.
>Hand Arendall, LLC
>1200 Park Place Tower
>2001 Park Place North
>Birmingham, Alabama  35203
>
>Frank Winston, Jr., Esq.
>Steptoe & Johnson LLP
>1330 Connecticut Avenue, N.W.
>Washington, D.C.  20036

>/s/ FRED R. DELEON, JR.
>REBECCA W. PRITCHETT
>Attorney for Plaintiff
>Alabama Gas Corporation