FILED
2011 Nov-28 PM 03:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

```
                                                                    1
 1            IN THE UNITED STATES DISTRICT COURT FOR

 2               THE NORTHERN DISTRICT OF ALABAMA

 3                       SOUTHERN DIVISION

 4      --------------------------x

 5      ALABAMA GAS CORPORATION,     :

 6              Plaintiff,           :

 7          v.                       :   CIVIL ACTION FILE

 8      TRAVELERS CASUALTY AND       :   NO. 2:10CV01840IPJ

 9      SURETY COMPANY, ST. PAUL     :

10      FIRE AND MARINE INSURANCE    :

11      COMPANY, ST. PAUL SURPLUS    :

12      LINES INSURANCE COMPANY,     :

13      AND ST. PAUL MERCURY         :

14      INSURANCE COMPANY,           :

15              Defendants.          :

16      --------------------------x

17              Deposition of PETER HILDEBRAND

18                     Atlanta, Georgia

19                Tuesday, October 11, 2011

20                        9:05 a.m.

21      Pages: 1 - 194

22      Reported by: Genevie Morell, RPR, CCR
```

DEPOSITION OF PETER HILDEBRAND
CONDUCTED ON TUESDAY, OCTOBER 11, 2011

20

1    assert the question of whether a PRP letter

2    constitutes a suit for purposes of insurance

3    coverage -- strike that.  Let me rephrase that.

4           Is it your position that in any state

5    where the issue of whether a PRP letter constitutes

6    a suit for purposes of triggering insurance coverage

7    has not been decided, that in those states an

8    insurance company cannot in good faith debate that

9    question for purposes of denying the claim?

10       A.  I'm not sure what you mean by debate.

11   Debate the question, I'm not --

12       Q.  Well, can an insurance company assert its

13   position that a PRP letter does not constitute a

14   suit?

15           MR. LASETER:  Objection.  Vague.

16       A.  Well, you know, custom and practice is if

17   you have a venue that has no rule of law on that

18   specific issue, you're going to look to the majority

19   rule and see where other courts have been deciding

20   on that particular issue.

21           But probably more importantly, in a duty to

22   defend case, it would seem to me that since it's an

DEPOSITION OF PETER HILDEBRAND
CONDUCTED ON TUESDAY, OCTOBER 11, 2011

21

```
 1    unknown, at least at best to the insurance company
 2    it's an unknown, that the suit is a PRP letter -- a
 3    PRP letter is a suit, if that's an unknown to them
 4    because there's no case law on that decision or case
 5    law decision in that state, it wouldn't be clear to
 6    them, at best, whether or not they had coverage and,
 7    therefore, they should be -- if they feel that they
 8    want to stand on that position, they should be
 9    defending the case and moving forward with the
10    reservation of rights letter in order to resolve
11    that either by following a dec action or by some
12    sort of compromise with the policyholder.
13              In other words, it's not my position that
14    the insurance company, I guess using your word, is
15    not in a position to debate it.  The question really
16    is if you're presented with this claim and you have
17    a position that you think you can assert relative to
18    a PRP letter not being a suit and there's no case
19    law to support you, there's no reason for you not to
20    give the benefit of the doubt, because there is
21    doubt to the policyholder by defending the case and
22    defending it subject to reserving that right and
```

22

1    preserving whatever rights you want under the policy
2    and following your dec action to get it resolved for
3    your purposes.
4    BY MR. WINSTON:
5        Q.  So in your view then is it bad faith for an
6    insurance carrier to deny a claim on the grounds
7    that a PRP letter does not constitute a suit in a
8    jurisdiction where that state supreme court has not
9    ruled on the issue?
10       A.  Okay, let me clarify one thing.  The
11   determination of whether it's bad faith or not is a
12   determination that's going to be left to the court
13   or the jury.  It's not up to an expert to opine on
14   the legal issue of whether it's bad faith or not.
15           However, as a claims professional I can say
16   that it would not be consistent with the duty of
17   good faith and fair dealing for an insurance company
18   when there's a situation like that where they
19   clearly cannot support their denial coverage with
20   any case law for them not to defend that case and
21   proceed subject to reservation of rights because the
22   duty to defend is broader than the duty to indemnify

23

1   and the claim or the substance of the claim, if they

2   don't have a specific basis to say it fits within

3   the law, would create enough of a question that

4   there's possible coverage such that they would have

5   to defend.

6        Q.  Let me try one more time.  If you can,

7   answer this question yes or no.  In your opinion

8   sitting here today as a designated expert, is it bad

9   faith for an insurance company to deny a claim on

10  the grounds that a PRP letter does not constitute a

11  suit for purposes of triggering insurance company in

12  a state where the, Alabama Supreme Court or the

13  state supreme court or any court has not ruled on

14  that issue?

15       MR. LASETER:  Objection.  Asked and

16  answered and argumentative now.

17  BY MR. WINSTON:

18       Q.  Can you answer that yes or no?

19       A.  I think it depends.  It depends on a

20  multiple group of circumstances involved.  It can

21  depend on the type of state that you're in.  I mean,

22  certain states are very unfriendly to insurance

24

1    companies and render with some frequency opinions

2    that are contrary to coverage positions taken by

3    insurance companies.  They can be an unfriendly

4    venue.  There can also be other case law from that

5    state which would show trending on that type of

6    issue or similar issues against insurance companies.

7           So, you know, it's not a yes or no question

8    and answer because there are multiple factors that

9    need to be involved.  But in this particular

10   instance I don't believe it would be consistent not

11   to defend this case subject to reservation of rights

12   when you have no case law to support that position

13   and you have these known facts that would fit within

14   to your coverage.  So it's not consistent with good

15   faith and fair dealing.

16       Q.  When you talk about "this case," you're

17   talking about this Alagasco case, is that correct?

18       A.  That's the case we're here for, yes.

19       Q.  Right.  Which was not part of my question

20   and I'm happy for you to expound on that and we're

21   going to get into that a little more later.

22           Let me ask you this:  When you were

120

1    Quote: It is well established that on environmental
2    issues without clear precedent in Alabama, the
3    courts will follow the majority rule which would
4    require Travelers to defend against the allegations
5    in a PRP letter when there is a duty to defend a
6    suit in the policy, end quote.
7             So the court would follow the majority rule
8    in an environmental coverage case is what that
9    sentence says and in this case it would require
10   Travelers to defend the PRP letter because that's
11   the majority rule?
12             MR. LASETER: Objection. Mischaracterizes
13   his sentence.
14   BY MR. WINSTON:
15       Q.  Is that a mischaracterization of the
16   sentence?
17       A.  The sentence speaks for itself.
18       Q.  The sentence speaks for itself, okay.
19            Let me ask you this: If there was an
20   environmental coverage issue considered by the
21   Alabama Supreme Court and it was a case to first
22   impression and five courts had ruled one way on the

121

1  issue, two courts had ruled a different way, would
2  the Alabama Supreme Court adopt the position taken
3  by the five courts?
4      A.  You know, I think you're missing the point
5  because we're not here to project what the Alabama
6  Supreme Court is going to do.  We're here to rely
7  upon what they told us they would do and they have
8  told us that on environmental cases that when there
9  is no precedent in their state, that they will
10 generally follow the majority rule.
11          And a claims person who's handled
12 environmental claims absent a definitive court
13 ruling in a state should be looking to see what the
14 majority rule is on that issue outside of that state
15 to determine how they intend to handle the claim.  I
16 didn't see where there was any indication or
17 documentation in this file where the claims people
18 ever even considered that.  In fact, they didn't
19 even get a legal opinion in regard to that prior to
20 what they were doing.
21          So I think it's really missing the boat to
22 say it's five to two or one to nothing or anything

122

1  like that.  The real issue here is that the supreme

2  court there has said that we're generally going to

3  follow the majority rule.

4      Q.  Okay.

5      A.  And you majority rule -- or you have no

6  definitive decision in Alabama, therefore, if

7  there's possible coverage and that's the only basis

8  on which you're saying you have no duty to defend,

9  then you should be saying well, it's not definitive

10 that we can deny coverage on that basis, therefore,

11 with possible coverage we have a duty, generally,

12 because the duty to defend is broader, we have a

13 duty to defend this until we can get a decision one

14 way or another.

15     Q.  So based on what the Alabama Supreme Court

16 has told us, the conclusion would be that if five

17 courts had ruled one way and two courts had ruled a

18 different way, the Alabama Supreme Court would adopt

19 the decision taken by the five supreme courts?

20         MR. LASETER:  Objection.  Asked and

21 answered.

22     A.  I'm not going to speculate as to what the

123

1   Alabama Supreme Court would rule under those

2   circumstances because it really is less important

3   than the fact that the claims handler needs to apply

4   all reasonable knowledge to doing what they're doing

5   in this case.  And if they know that the majority

6   rule is contrary to a position they want to take and

7   they don't seek any legal advice in that regard and

8   they continue to send out letters reserving their

9   rights without telling the policyholder of that

10  position and out of the blue they then end up taking

11  that position in February, it seems to me that it's

12  just darn wrong.  It is wrong.  It's not right and

13  it certainly isn't reasonable.

14          It's not even fairly debatable because how

15  can it be debatable, they have no support.  They

16  have no decision to support their decision.  They

17  have no court decision to support their position.

18  BY MR. WINSTON:

19      Q.  Let me restate this sentence again.  It

20  says, quote:  It is well established that on

21  environmental issues without clear precedent in

22  Alabama, the courts will follow the majority rule

124

1  which would require Travelers to defend against the
2  allegations in a PRP letter when there is a duty to
3  defend a suit in a policy, end quote.  Do you stand
4  by that sentence?
5       A.  I stand by that sentence.
6       Q.  So if five courts had ruled one way on an
7  issue of first impression on environmental coverage
8  for the Alabama Supreme Court and two courts rule a
9  different way, your opinion, based on what the
10 Alabama Supreme Court has said, is that the court
11 will adopt the position taken by the five courts,
12 correct?
13      A.  It's my position that the Alabama Supreme
14 Court has sent us a note to tell us that when they
15 approach these cases, that's the approach they're
16 going to take.
17      Q.  Now, let's say the following week there's
18 four new cases in which four other supreme courts
19 adopt what until then had been the minority
20 position --
21           THE COURT REPORTER:  I'm sorry, I didn't
22 understand that.

DEPOSITION OF PETER HILDEBRAND
CONDUCTED ON TUESDAY, OCTOBER 11, 2011

125

1  BY MR. WINSTON:
2       Q.  Let's say that the following week four
3  other state supreme courts consider that same issue
4  and adopt a position which had previously been
5  adopted by the two courts.  At that point is the
6  Alabama Supreme Court going to reverse its prior
7  holding and adopt the majority position?
8            MR. LASETER:  Objection.  Your sentence
9  doesn't make sense.  You just pulled it up to a tie.
10           MR. WINSTON:  That was five to two and I
11 added four to the two.
12           MR. LASETER:  You mean to make it six to
13 five the other way?
14           MR. WINSTON:  Yes.
15      A.  Again, I can't tell you what the Alabama
16 Supreme Court is going to rule per se.  It's not
17 definitive absolutely sure they're going to do
18 something.  They have sent out an indication of what
19 they're going to do.
20           I've never heard of a situation where
21 overnight on an environmental issue where four cases
22 suddenly come out of the blue to change who the

DEPOSITION OF PETER HILDEBRAND
CONDUCTED ON TUESDAY, OCTOBER 11, 2011

126

1  majority rule is overnight.  So I think your
2  hypothetical is rather extreme and certainly not
3  founded on the basis of what's going on in this
4  case.
5      Q.  Well, is it well established what the
6  Alabama Supreme Court would do in that situation?
7      A.  In the situation where that never occurred
8  and never has occurred and never will occur, I don't
9  think anything's well established.
10     Q.  Anything could happen?
11     A.  Your scenario is absolutely ludicrous.
12     Q.  Are you going to answer the question?
13     A.  The answer is you never know what the
14  supreme court is going to do per se until they've
15  done it.
16     Q.  By the way, do you know what major
17  environmental coverage issue the Alabama Supreme
18  Court was considering in the Alabama Plating case?
19     A.  I haven't refreshed my recollection on that
20  in preparation for the deposition, so the answer is
21  I don't recall.
22     Q.  If I told you it was a sudden and

127

1    accidental pollution exclusion, would that refresh

2    your recollection?

3         A.   No.

4              MR. LASETER:  I believe that would be

5    inaccurate as well.

6              MR. WINSTON:  Really?

7    BY MR. WINSTON:

8         Q.   If you look at your opinion Number 2 and

9    your opinion Number 2 states:  A reasonably

10   competent claims professional would consider

11   Travelers' failures to follow its own procedures

12   and/or business practices by not advising Alagasco

13   of its coverage position in a reasonable time and by

14   not securing legal advice before de facto denying

15   coverage as evidence of an intentional or reckless

16   failure to investigate Alagasco's right to coverage

17   or failure to subject the results of its

18   investigation to cognitive evaluation in a timely

19   fashion, end quote.

20             I'm just a little curious or need some

21   clarification.  What do you mean by quote, de facto

22   denying coverage, end quote?