IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALABAMA GAS CORPORATION,

    Plaintiff,

vs.                                          CASE NO. CV-10-J-1840-S

TRAVELERS CASUALTY AND
SURETY COMPANY, et al.,

    Defendants.

## MEMORANDUM OPINION and ORDER

    Pending before the court are multiple motions for summary judgment filed by the plaintiff and the defendants. Each of the claims in this case arises out of defendants' refusal to defend or indemnify plaintiff on a claim for which the plaintiff asserts the insurance policies in question should provide coverage. The plaintiff's claims include Declaration of Duty to Defend; Reimbursement for Defense Costs; Bad Faith;, Declaration of Duty to Indemnify; and Waiver and Estoppel. In other words, this case concerns whether defendants' denial of insurance coverage to plaintiff was reasonable, and if not, whether such denial was in bad faith. Of course, if the denial was not reasonable, the court will declare that defendant has a duty to defend and/or indemnify the plaintiff.

    The plaintiff asserts that defendant Travelers knew or should have known that its position in this case, that being defendants' assertion that the Potentially

Responsible Party ("PRP") Letter the plaintiff received from the EPA was not a "suit" triggering the duty to defend, was not fairly debatable, and hence the court should find that defendant Travelers acted in bad faith as a matter of law[1] (doc. 126 at 16). Defendants' motion and supporting evidence seeks judgment in its favor and against the plaintiff on the bad faith claim by alleging that every action taken by defendant Travelers in investigating the plaintiff's claim was reasonable, based on a full investigation, and not done with a "dishonest purpose, some motive of self-interest, or ill will." (doc. 127 at 2). Of course, if coverage is not triggered by receipt of the PRP letter, then the defendants' actions could not have been in bad faith. Hence, the issue of whether coverage is available under the circumstances of this case is dispositive of all of the plaintiff's claims.

This is not the first time the court has been asked in this action to grant judgment on behalf of one party or another on the issue of plaintiff's claim for bad faith. On January, 11, 2011, the plaintiff filed a motion similar to the one now before this court, also entitled "Alagasco's motion for partial summary judgment on bad

---

[1] Under CERCLA, a PRP shall be liable for: "(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan; (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and (D) the costs of any health assessment or health effects study carried out under section 9604(i)." 42 U.S.C. § 9607(a)(4).

faith" (doc. 57). At that time, the court issued an order finding that said motion was due to be denied because genuine issues of material fact existed (doc. 67). The court is still of the opinion that genuine issues of material fact exist. However, the court has also reached the further conclusion that rather than the parties filing extensive briefs and thousands of pages of evidence (as they have done to date), concerning what the Alabama Supreme Court may decide if and when the question of law in this case is before them, the court should certify the question of coverage to the Supreme Court of Alabama for clarification before ruling on any of the pending motions for summary judgment.[2]

The court finds the underlying issue for trial in this case is whether the defendants acted reasonably in denying coverage to the plaintiff. The defendants rely on the fact that there has been no "suit" filed against the plaintiff. The plaintiffs counter that 44 of the 50 states have found a PRP letter from the EPA sufficient to trigger coverage under similar facts.

Under Alabama law, when doubt exists as to whether coverage exists under an insurance contract, language used by the insurer must be construed for the benefit of the insured. *Associated Scrap Metal, Inc. v. Royal Globe Insurance Co.*, 927 F.Supp.

---

[2]Although the parties have made much ado concerning whether the Alabama Supreme Court will consider a claim based on a PRP letter from the EPA sufficient to trigger coverage under the insurance policy in question, the court notes neither of the parties have requested that question be certified to the Alabama Supreme Court.

432, 437 (S.D.Ala.1995) (finding insurer had duty to provide coverage in case where scrap metal company was notified by EPA of potential liability as PRP).  See also *State Farm Mutual Auto. Insurance. Co. v. Lewis*, 514 So.2d 863, 865 (Ala.1987) (stating exceptions to insurance coverage are to be interpreted as narrowly as possible in order to provide maximum coverage for the insured).  Applying this logic to similar actions in other states and other federal circuits, courts have held that CERCLA administrative proceedings initiated by PRP letters constitute "suits." See e.g., *Wells Cargo, Inc. v. Transport Insurance Co.*, 2011 WL 5080143 (D.Idaho 2011) (stating "[i]f the threat is clear then coverage should be provided."); *Ash Grove Cement Co. v. Liberty Mut. Ins., Co.*, 2011 WL 2470109, 3 (D.Or.2011) ("the 104(e) request for information the EPA sent to Ash Grove, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9604(e), constituted a "suit" under the terms of the insurance policies ... thus triggering the insurers' duty to defend ....")

  The court has also considered the aspect of law which states that whether the government performs the cleanup itself or compels a PRPs to do it, the government is authorized to recover "all costs of removal or remedial action" associated with the cleanup from such PRPs, either through a civil action under § 107(a)(4)(A), or through an administrative settlement under § 122(g) or § 122(h). 42 U.S.C. §§

9607(a)(4)(A), 9622(g) & (h); *Solutia, Inc. v. McWane, Inc.*, 726 F.Supp.2d 1316 (N.D.Ala.2010). Under CERCLA's strict liability regime, a party that falls within any of the four PRP categories of § 107(a) may be held jointly and severally liable by the government for the entire cost of a cleanup, even if the party is "innocent" in the sense that it did not contribute to the pollution at the site. *See* § 9607(a), *Canadyne-Georgia Corp. v. NationsBank, N.A. (South),* 183 F.3d 1269, 1275 (11th Cir.1999); *U.S. v. Atlantic Research Corp.*, 551 U.S. 128, 136, 127 S.Ct. 2331 (2007).

The law does not distinguish between civil actions and administrative settlements in the manner defendants seem to assert it should.  Indeed, such a distinction would lead to the nonsensical result that PRPs would ask the EPA to sue them rather than bring an administrative action so insurers would then provide coverage for "suits."  Conversely, insurers would have an incentive to lobby the EPA to bring administrative actions.  Such disparate consequences were not the intent of CERCLA or the administrative settlement verses civil action paths provided for by statute.

Thus, the court finds the Alabama Supreme Court has ample basis to consider a PRP lettter a "suit" sufficient to trigger insurance coverage.  However, the court also finds that the Alabama Supreme Court could interpret an insurance contract clause such as the one relevant in this action to actually require a "suit" as opposed

to an administrative action. The parties agree that "no Alabama state court or any federal court applying Alabama law ha[s] ever addressed whether a PRP letter from the EPA satisfies the "suit" requirement under a liability policy. Defendants' brief in opposition to plaintiff's motion for summary judgment (doc. 162, at 12), citing to plaintiff's brief (doc. 22) at 1, 17, 19.

Having considered the arguments of the parties, as well as having read extensive briefing regarding testimony of "experts" concerning how the Supreme Court of Alabama would rule, the court is of the opinion that the Supreme Court of Alabama should make the determination of whether a PRP letter from the EPA satisfies the "suit" requirement under a liability policy.

The Eleventh Circuit instructs that "[w]here there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie*[3] 'guesses' and to offer the state court the opportunity to interpret or change existing law." *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916–17 (11th Cir.1995). Rule 18, Ala.R.App.P., allows a federal district court to certify a question of law to the Supreme Court of Alabama whenever "it shall appear ... that there are involved in any proceeding before [the federal court] questions or propositions of law of [Alabama] which are

---

[3]*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

determinative of said cause and that there are no clear controlling precedents in the decisions of the supreme court of this state...." Rule 18, Ala.R.App.P., see also *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997) ("[T]he only authoritative voice on Alabama law is the Alabama Supreme Court...."). Resolution in this way avoids the unnecessary practice of guessing the outcome under state law and offers the state court an opportunity to explicate state law." *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1268 (11th Cir.2003) (citations omitted).

Because resolution of this issue is potentially dispositive of all the claims in this case, the court will certify the question to the Supreme Court of Alabama of whether, under Alabama law, is a "potentially responsible party" letter from the Environmental Protection Agency, in accordance with CERCLA provisions, sufficient to satisfy the "suit" requirement under a liability policy of insurance?

**CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION, TO THE SUPREME COURT OF ALABAMA, PURSUANT TO SECTION 6.01(b)(3) OF THE CONSTITUTION AND RULE 18 OF THE ALABAMA RULES OF APPELLATE PROCEDURE.**
**TO THE SUPREME COURT OF THE STATE OF ALABAMA AND THE HONORABLE JUSTICES THEREOF:**

In support of said certificate, the following facts are shown to the Court:

**(1) Style of the Case:**

In the United States District Court for the Northern District of Alabama, Southern Division: *Alabama Gas Corporation v. Travelers Casualty and Surety Company; St. Paul Fire & Marine Insurance Company; St. Paul Surplus Lines Insurance Company; St. Paul Mercury Insurance Company*, Civil Action No. 2:10-cv-1840-IPJ,

**(2) Background:**

The facts showing the nature of the cause and the circumstances out of which the questions or propositions of law arise are set out and discussed in detail in the United States District Court's Memorandum Opinion entered on December 7, 2010 (doc. 51), as modified by the District Court's Opinion of February 2, 2011 (doc. 66), copies of which are attached to this Certificate.

**(3) Questions to be Certified to Supreme Court of Alabama:**

Pursuant to Section 6.01(b)(3) of the Constitution of Alabama 1901 and Rule 18 of the Alabama Rules of Appellate Procedure, the following questions are hereby certified to the Supreme Court of Alabama**:**

UNDER ALABAMA LAW, IS A "POTENTIALLY RESPONSIBLE PARTY" ("PRP") LETTER FROM THE ENVIRONMENTAL PROTECTION AGENCY ("EPA"), IN ACCORDANCE WITH THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT ("CERCLA")

PROVISIONS, SUFFICIENT TO SATISFY THE "SUIT" REQUIREMENT UNDER A LIABILITY POLICY OF INSURANCE?

The statement of the questions is not designed to limit the inquiry of the Supreme Court of Alabama, or in any way to restrict that Court's consideration of the problems involved and the issues as it perceives them to be in its analysis of the record in this case.

The clerk of this court is **ORDERED** and **DIRECTED** to immediately transmit to the Supreme Court of Alabama the certificate prepared by the court certifying the question of law which is deemed determinative of the claims in this cause and to which there is no clear controlling precedents in the decisions of the Supreme Court of Alabama. The clerk is further **ORDERED** to comply with the Supreme Court of Alabama's request, if made, that it be provided with any or all portions of the record in this matter.

Pursuant to ARAP, Rule 18, the United States District Court for the Northern District of Alabama requests the Supreme Court of Alabama to answer the question of law which is deemed determinative of an action before said federal court to which there is no clear controlling precedent in the decisions of the Supreme Court of Alabama.

It is further **ORDERED** by the court that all proceedings in this action are **STAYED** pending resolution of the certified question set forth above by the Supreme Court of Alabama.

**DONE** and **ORDERED** this the 14th day of December, 2011.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE