FILED
2013 Jun-25  PM 03:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALABAMA GAS CORPORATION,

    Plaintiff,

vs.                                   CASE NO. CV-10-J-1840-S

TRAVELERS CASUALTY AND
SURETY COMPANY, et al.,

    Defendants.

## MEMORANDUM OPINION and ORDER

Pending before the court are cross- motions for summary judgment filed by the

parties.  Each of the claims in this case arises out of defendants' refusal to defend or

indemnify plaintiff on a claim for which the plaintiff asserts the insurance policies in

question should provide coverage.[1]

As previously set forth by the court, the facts relevant to this case began before

1900.  The lengthy, relevant facts are not in dispute, and the court summarizes the

same here.   The Huntsville Gas Light Company incorporated in 1856 and

manufactured gas.  That company and its operations moved to the site relevant to this

action prior to 1886, under the name Hunstville Gas Light and Coke Company

("HGLC").  *See e.g.*, doc. 130-3 (Exhibit B) at 3.  HGLC, under several different

---

[1]The court shall address the question of coverage by separate Memorandum Opinion and
Order.

names, provided gas produced from various sources to customers until 1946.  Spills, leaks and emissions released substances classified as hazardous into the environment.[2]  In 1946 the Huntsville facility was converted to a propane air system, and then plaintiff (a corporate successor to the Huntsville company) sold the plant and distribution system to the City of Huntsville in 1949.  Depo. of Dennis Unites (doc. 130-2), at 37-38.  Although a natural gas pipeline was installed in March 1952, ending the need for the propane system, the City of Huntsville used the site for various utility service purposes until 1967.  In 1967 ownership of the site was transferred for purposes of constructing public housing.  The plant was demolished, and the Searcy Homes public housing project was completed in 1971, with title to the land passing to the Huntsville Housing Authority at that time.  Doc. 133-1 at 7, ¶ 9.h.

From 1947 until 1984, plaintiff alleges it was insured under liability policies issued by various subsidiaries of defendant Travelers Casualty and Surety Company.[3]  In 2008 plaintiff received an "information request" letter from the EPA and a

---

[2]More specifically, in both the coal gasification process and the carbureted gas manufacture process, tars and oils are generated which contain polynuclear aromatic hydrocarbons ("PAHs"), which are carcinogenic. *See e.g.*, doc. 133-1 at 8; Unites depo. (doc. 130-2) at 38.

[3]Defendants dispute that Travelers insured plaintiff continuously from 1947 until 1984 because portions of policies issued between 1947 and 1967 are missing.  Defendants' brief in opposition (doc. 163) at 2.  No evidence of any policies issued prior to 1967 has been submitted to the court.  By Opinion and Order dated February 2, 2011, this court has previously ruled that the only proof of an insurance contract between the parties is for July 10, 1967, to July 10, 1983.  See Memorandum Opinion and Order of February 2, 2011 (doc. 66), at 2-3.

pollution report regarding this site. *See e.g*, doc. 130-20 (Exhibit N) at 3. Plaintiff

forwarded the same to the defendants along with a demand for coverage in October

2008. *Id*., at 1. In November 2008 defendants notified plaintiff that there was no

"formal claim" and thus there could be no coverage until "such a claim or lawsuit is

received." Doc. 130-22 (Exhibit P). In June 2009 the plaintiff received a formal PRP

letter, which it again forwarded to the defendant. Doc. 130-21 (Exhibit O). On

February 3, 2010, the defendants informed plaintiff that there was no "suit" and hence

there was no defense obligation on its part. *See* Memorandum Opinion of December

7, 2010, at 8-9; *see also* doc. 130-23 (Exhibit Q). The plaintiff's claims include

Declaration of Duty to Defend; Reimbursement for Defense Costs; Bad Faith;

Declaration of Duty to Indemnify;  and Waiver and Estoppel. In sum, this case

concerns whether defendants' denial of insurance coverage to plaintiff was

reasonable, and if not, whether such denial was in bad faith.    The parties dispute

whether defendant Travelers knew or should have known that its position in this case,

that being defendants' assertion that the Potentially Responsible Party ("PRP") Letter

the plaintiff received from the EPA was not a "suit" triggering the duty to defend, was

not fairly debatable. Plaintiff thus asserts that the court should find that defendant

Travelers acted in bad faith as a matter of law[4] (doc. 126 at 16).

Because the court found the issue of whether a PRP Letter was a suit for purposes of triggering the duty to defend was dispositive of the bad faith claim, and because the parties agreed that "no Alabama state court or any federal court applying Alabama law ha[s] ever addressed whether a PRP letter from the EPA satisfies the "suit" requirement under a liability policy,"[5] the court certified this question to the Alabama Supreme Court. *See Travelers Casualty and Surety Company v. Alabama Gas Corp..,* – So.3d – , 2012 WL 6720790 (Ala.2012). Specifically, this court asked:

> Under Alabama law, is a 'Potentially Responsible Party' ('PRP') letter from the Environmental Protection Agency ('EPA'), in accordance with the Comprehensive Environmental Response Compensation and Liability Act ('CERCLA') provisions, sufficient to satisfy the 'suit' requirement under a liability policy of insurance?"

*Id.,* at 1. The Supreme Court of Alabama responded by stating "[w]e answer this question in the affirmative." *Id*. With this background, the court considers the pending motions.

---

[4]Under CERCLA, a PRP shall be liable for: "(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan; (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and (D) the costs of any health assessment or health effects study carried out under section 9604(i)." 42 U.S.C. § 9607(a)(4).

[5]Defendants' brief in opposition to plaintiff's motion for summary judgment (doc. 162, at 12), citing to plaintiff's brief (doc. 22) at 1, 17, 19.

A.  **Plaintiff's renewed motion for partial summary judgment on bad faith** (doc. 125); Evidentiary submissions in support of said motion (docs. 126, 136-139, 169-171); Defendants' opposition to plaintiff's motion (doc. 162); Plaintiff's reply to defendants' opposition (doc. 181); and Evidence in support of plaintiff's reply to defendant's opposition (docs. 177-178)

B.  **Defendants' motion for summary judgment seeking dismissal of plaintiff's claim for bad faith** (Count III) (doc. 127); Defendants' brief and evidence in support of its own motion (doc. 129); Plaintiff's response to defendants' motion for summary judgment (doc. 164); and Defendants' reply in support of defendants' motion for summary judgment (doc. 179)

Pursuant to the parties' request, the court also allowed each party to submit a short additional brief concerning the effect of the Supreme Court of Alabama's December 28, 2012, opinion on the pending motions.  The court received additional pleadings addressing the same (docs. 210 and 211).  According to the plaintiff, the December 28, 2012, decision "should have no material effect" on the court's consideration of the pending motions (doc. 210).  The defendants assert the Alabama Supreme Court's decision confirmed that whether a PRP letter constituted a suit was "fairly debatable" under Alabama law at the time defendants made their coverage determination, and thus requiring that the plaintiff's claim for bad faith must be

dismissed as a matter of law (doc. 211).

Defendants' motion and supporting evidence seeks judgment in their favor and against the plaintiff on the bad faith claim by alleging that every action taken by defendant Travelers in investigating the plaintiff's claim was reasonable, based on a full investigation, and not done with a "dishonest purpose, some motive of self-interest, or ill will." (doc. 127 at 2).

In certifying the question to the Alabama Supreme Court, this court held:

The court finds the underlying issue for trial in this case is whether the defendants acted reasonably in denying coverage to the plaintiff. The defendants rely on the fact that there has been no "suit" filed against the plaintiff. The plaintiffs counter that 44 of the 50 states have found a PRP letter from the EPA sufficient to trigger coverage under similar facts.

Under Alabama law, when doubt exists as to whether coverage exists under an insurance contract, language used by the insurer must be construed for the benefit of the insured. *Associated Scrap Metal, Inc. v. Royal Globe Insurance Co.*, 927 F.Supp. 432, 437 (S.D.Ala.1995) (finding insurer had duty to provide coverage in case where scrap metal company was notified by EPA of potential liability as PRP). See also *State Farm Mutual Auto. Insurance. Co. v. Lewis*, 514 So.2d 863, 865 (Ala.1987) (stating exceptions to insurance coverage are to be interpreted as narrowly as possible in order to provide maximum coverage for the insured). Applying this logic to similar actions in other states and other federal circuits, courts have held that CERCLA administrative proceedings initiated by PRP letters constitute "suits." See e.g., *Wells Cargo, Inc. v. Transport Insurance Co.*, 2011 WL 5080143 (D.Idaho 2011) (stating "[i]f the threat is clear then coverage should be provided."); *Ash Grove Cement Co. v. Liberty Mut. Ins., Co.*, 2011 WL 2470109, 3 (D.Or.2011) ("the 104(e) request for information

the EPA sent to Ash Grove, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9604(e), constituted a "suit" under the terms of the insurance policies ... thus triggering the insurers' duty to defend ....")

The court has also considered the aspect of law which states that whether the government performs the cleanup itself or compels a PRP to do it, the government is authorized to recover "all costs of removal or remedial action" associated with the cleanup from such PRPs, either through a civil action under § 107(a)(4)(A), or through an administrative settlement under § 122(g) or § 122(h). 42 U.S.C. §§ 9607(a)(4)(A), 9622(g) & (h); *Solutia, Inc. v. McWane, Inc.*, 726 F.Supp.2d 1316 (N.D.Ala.2010).   Under CERCLA's strict liability regime, a party that falls within any of the four PRP categories of § 107(a) may be held jointly and severally liable by the government for the entire cost of a cleanup, even if the party is "innocent" in the sense that it did not contribute to the pollution at the site. *See* § 9607(a), *Canadyne-Georgia Corp. v. NationsBank, N.A. (South),* 183 F.3d 1269, 1275 (11th Cir.1999); *U.S. v. Atlantic Research Corp.*, 551 U.S. 128, 136, 127 S.Ct. 2331 (2007).

The law does not distinguish between civil actions and administrative settlements in the manner defendants seem to assert it should.  Indeed, such a distinction would lead to the nonsensical result that PRPs would ask the EPA to sue them rather than bring an administrative action so insurers would then provide coverage for "suits."  Conversely, insurers would have an incentive to lobby the EPA to bring administrative actions.  Such disparate consequences were not the intent of CERCLA or the administrative settlement versus civil action paths provided for by statute.

Thus, the court finds the Alabama Supreme Court has ample basis to consider a PRP letter a "suit" sufficient to trigger insurance coverage. However, the court also finds that the Alabama Supreme Court could interpret an insurance contract clause such as the one relevant in this action to actually require a "suit" as opposed to an administrative action.

The parties agree that "no Alabama state court or any federal court applying Alabama law ha[s] ever addressed whether a PRP letter from the EPA satisfies the "suit" requirement under a liability policy. Defendants' brief in opposition to plaintiff's motion for summary judgment (doc. 162, at 12), citing to plaintiff's brief (doc. 22) at 1, 17, 19.

Having considered the arguments of the parties, as well as having read extensive briefing regarding testimony of "experts" concerning how the Supreme Court of Alabama would rule, the court is of the opinion that the Supreme Court of Alabama should make the determination of whether a PRP letter from the EPA satisfies the "suit" requirement under a liability policy.

The Eleventh Circuit instructs that "[w]here there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie*[6] 'guesses' and to offer the state court the opportunity to interpret or change existing law." *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916–17 (11th Cir.1995). Rule 18, Ala.R.App.P., allows a federal district court to certify a question of law to the Supreme Court of Alabama whenever "it shall appear ... that there are involved in any proceeding before [the federal court] questions or propositions of law of [Alabama] which are determinative of said cause and that there are no clear controlling precedents in the decisions of the supreme court of this state...." Rule 18, Ala.R.App.P., see also *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997) ("[T]he only authoritative voice on Alabama law is the Alabama Supreme Court ...."). Resolution in this way avoids the unnecessary practice of guessing the outcome under state law and offers the state court an opportunity to explicate state law." *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1268 (11th Cir.2003) (citations omitted).

Memorandum Opinion and Order of December 14, 2011 (doc. 189).

---

[6]*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

In order to establish a claim of bad faith refusal to pay under Alabama law, a plaintiff must prove: "(1) the existence of an insurance contract; (2) an intentional refusal to pay the claim; and (3) the absence of any lawful basis for refusal and the insurer's knowledge of that fact or the insurer's intentional failure to determine whether there is any lawful basis for its refusal." *Acceptance Ins. Co. v. Brown*, 832 So.2d 1, 16 (Ala.2001). "If [the plaintiff's] evidence fails to eliminate any arguable reason for denying payment, any fairly debatable reason on a matter of fact or a matter of law, he cannot recover under the tort of 'bad faith refusal [to pay].'" *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So.2d 179, 185 (Ala.1982).  A debatable or arguable reason is "a reason that is open to dispute or question." *Koch v. State Farm Fire & Casualty Co.*, 565 So.2d 226, 229 n. 4 (Ala.1990). "When a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Davis v. Cotton States Mutual Insurance Co.*, 604 So.2d 354, 358–59 (Ala.1992) (internal quotes omitted).  The burden on the plaintiff arguing the absence of a debatable reason is so great that, "in the 'normal' case, a plaintiff's bad-faith claim may not be submitted to the jury unless she shows that she is entitled to a directed verdict on the contract claim." *Alfa Mutual Fire Insurance Co. v. Thomas*, 738 So.2d 815, 822 (Ala.1999).  Thus, " '[i]f any one reason for denial of coverage is at least 'arguable,' [a] court need not look any further,' and a claim for bad faith

refusal to pay will not lie." *Weaver v. Allstate Ins. Co.*, 574 So.2d 771, 774 (Ala.1990) (quoting *McLaughlin v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 437 So.2d 86, 91 (Ala.1983)) (holding that to succeed at summary judgment, the defendant insurer only has the burden of showing "that it had a legitimate or arguable basis for the denial of the claim.").

Applying the above law to the facts of this case, the court is of the opinion that the plaintiff's renewed motion for partial summary judgment on Bad Faith (doc. 125); is due to be denied and the defendants' motion for summary judgment seeking dismissal of plaintiff's claim for Bad Faith (Count III) (doc. 127) is due to be granted. Defendants had an arguable basis for denying plaintiff's claim, namely that they did not believe Alabama law required a duty to defend under an insurance contract upon an insured's receipt of a PRP letter. "[W]here a legitimate dispute exists as to liability, ... a tort action for bad faith refusal to pay a contractual claim will not lie." *Bowers v. State Farm Mut. Auto. Ins. Co.*, 460 So.2d 1288, 1290 (Ala.1984). In fact, no such requirement for PRP letters appeared in Alabama law until after the initiation of this litigation and certification of that very question to the Alabama Supreme Court. *See Alabama Gas*, 2012 WL 6720790 at *3 ("neither the courts of this State nor any federal court applying Alabama law has ever addressed the issue whether a PRP letter from the EPA satisfies the 'suit' requirement under a liability policy ...").

Having considered the foregoing, and being of the opinion the plaintiff's motion for summary judgment is due to be denied and the defendants' motion is due to be granted;

It is therefore **ORDERED** by the court that the defendants' motion for summary judgment (doc. 127) on the plaintiff's bad faith claim is **GRANTED**, the court finding no genuine issues of material fact remain and that the defendants are entitled to judgment in their favor as a matter of law.[7]

It is further **ORDERED** by the court that, for the same reasons set forth herein, the plaintiff's motion for summary judgment on its bad faith claim (doc. 125) is **DENIED**.

**DONE** and **ORDERED** this the 25th day of June, 2013.

        INGE PRYTZ JOHNSON
        SENIOR U.S. DISTRICT JUDGE

---

[7]Defendants also argue that there could be no bad faith failure to pay because there is no coverage under the relevant policies. Because the court has found no bad faith as set forth in this opinion, the court does not address this further argument. The court shall consider all of the parties' respective arguments concerning coverage issues by separate opinion.